SAMUEL O'BANNON *et al.*, Plaintiffs-Appellees, *v.* NORTHERN PETRO-CHEMICAL COMPANY *et al.*, Defendants-Appellees.—(Hartford Accident and Indemnity Company, Intervening Appellant.)

First District (3rd Division)   No. 81—2983

Opinion filed March 30, 1983.

Rooks, Pitts, Fullagar & Poust, of Chicago (Terrance E. Kiwala and James J. Stamos, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (William E. Hourigan, James T. Ferrini, and Thomas J. Burke, of counsel), for appellee

Morrison Construction Company.

Jerome H. Torshen, Ltd. and Garretson & Santora, both of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee Northern Petrochemical Company.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

This appeal arises out of the settlement of an action based upon alleged violations of the Structural Work Act. Subsequent to the settlement and dismissal of the action, Hartford Accident & Indemnity Company, an insurer for two of the defendants, petitioned to intervene and to vacate a portion of the settlement order. The trial court denied both motions and Hartford appeals.

On October 4, 1977, plaintiff Samuel O'Bannon, an employee of Morrison Construction Company, brought this suit seeking $1,400,000 in damages for injuries sustained by plaintiff on December 6, 1976, when he fell from a scaffold while working at a construction site owned by defendant Northern Petrochemical Company. Northern, acting as its own general contractor, had issued contracts to six prime contractors to perform certain aspects of the work. Among those prime contractors were plaintiff's employer Morrison and defendant Charles O'Brien & Son Construction Co., Inc. Plaintiff alleged in an amended complaint that O'Brien had erected the scaffold and that violations of the Act by Northern and O'Brien had caused his injuries. Morrison, having paid Workmen's Compensation to plaintiff, intervened in order to protect its lien.

The contract between O'Brien and Northern required O'Brien to provide insurance coverage for any liability Northern might have for injuries arising out of work performed by O'Brien for Northern. O'Brien purchased such a policy from Hartford. Morrison, pursuant to similar contractual obligations to Northern, purchased an insurance policy from Continental Insurance Company to cover Northern's liability for injuries arising out of work performed by Morrison for Northern. Each of these policies had a limit of liability of $1,000,000.

Continental retained the law firm of Garretson & Santora to defend Northern in this suit. In a letter dated July 29, 1980, Northern tendered the defense of this suit to O'Brien under the insurance coverage O'Brien had purchased from Hartford. Northern received no response. Shortly after that, Garretson & Santora wrote demanding O'Brien's cooperation in the defense of this suit. This letter informed O'Brien of a pretrial hearing set for September 9, 1980, and de-

manded that a representative of either O'Brien or Hartford be present. The letter noted that plaintiff was suing Northern for an amount in excess of the Continental policy limits. Again no response was received.

On September 12, 1980, Northern filed a complaint against Hartford and O'Brien seeking a declaratory judgment that Hartford had a duty to defend and to indemnify Northern. It was Hartford's position that plaintiff's injuries were not covered by the Hartford policy because they had not arisen out of any work performed by O'Brien. Nevertheless, in response to Northern's tender of defense, Hartford agreed, in a letter dated October 27, 1980, while the declaratory judgment action was still pending, to participate in Northern's defense but only under a full and complete reservation of rights. Specifically, Hartford stated that it would share defense costs paid to Garretson & Santora if it were determined that Hartford's policy was primary over that of Continental. Hartford asserted further that if Northern wished to retain its own counsel Hartford would reimburse Northern for reasonable attorney fees in the event Hartford's policy was found to be primary.

By order of February 2, 1981, the trial court ruled in the declaratory judgment action that Hartford did have a contractual duty to defend Northern subject to Hartford's reservation of rights. The indemnification issue was found to be premature.

While the declaratory judgment action was pending, Northern's counsel kept Hartford advised of pretrials and continually requested Hartford's participation. Hartford's attorneys did attend three pretrials but made no settlement offer.

By letter dated May 27, 1981, Hartford was advised that Continental was entering into active negotiations with plaintiff's attorney. Although Hartford's participation was requested, it took no part in the negotiations. In Hartford's absence a settlement agreement was reached between the parties whereby plaintiff received $975,000, $935,000 from Continental on Northern's behalf and the balance from O'Brien. Morrison agreed to reduce its workmen's compensation lien claim from $130,000 to $70,000 in exchange for Northern's waiver of any indemnity claims it might have against Morrison. Pursuant to this agreement, the trial court, on June 23, 1981, entered an order which provided that "the above titled cause, including any and all counterclaims, third party claims and Workmen's Compensation claims, be and the same hereby are dismissed with prejudice and without costs."

On July 21, 1981, Hartford filed its petition to intervene, alleging that it had interests in the suit which were not adequately repre-

sented and that it might be bound by the order of dismissal. Hartford had been advised the declaratory judgment action would be reinstated against it unless Hartford voluntarily reimbursed Continental for one half of the $935,000 Continental had paid plaintiff on Northern's behalf. Although Hartford still denied that Northern was covered for plaintiff's injuries under its policy with Hartford, Hartford asserted that in the event the declaratory judgment action was reinstated, Hartford, as subrogee of Northern would want to file for indemnity against Morrison. Hartford expressed concern that the language in the court's order purporting to dismiss all counterclaims and third-party claims might be misconstrued to preclude Hartford from seeking such indemnity. Noting that Continental insured both Northern and Morrison, Hartford charged that the parties had included this language in the order for the specific purpose of preventing Hartford from exercising its subrogation rights against Morrison.

On the same date Hartford also filed a motion to vacate that part of the June 23 order purporting to dismiss "all counterclaims [and] third party claims ***." After a hearing the trial court denied both petitions.

On appeal, Hartford contends that it should have been allowed to intervene pursuant to the Civil Practice Act. Ill. Rev. Stat. 1979, ch. 110, par. 26.1(1)(b).

■ Timeliness of a petition to intervene is a matter for the discretion of the trial court. (*Avery v. Moseley* (1974), 19 Ill. App. 3d 1001, 313 N.E.2d 274.) Hartford's petition was filed after the case was settled and dismissed. Although intervention is usually allowed only before judgment, it may be granted after judgment when necessary to protect the rights of the intervenor. (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382.) Where, however, as in the present case, the intervenor was not only aware of the original suit but had ample opportunity to intervene prior to judgment, a post-judgment petition to intervene will be denied as untimely unless failure to intervene prior to judgment can be adequately explained. *Moore v. McDaniel.*

Hartford raises two arguments in its attempt to explain why it did not petition to intervene earlier in the proceedings. First, relying on *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, and *Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 404 N.E.2d 895, Hartford maintains that, because of a conflict of interest between it, as insurer, and Northern as the insured, it would not have been permitted to intervene in the suit prior to settlement. Second, Hartford urges that its petition was timely because it

was unaware that its interests were not being adequately represented until after settlement and dismissal and that it immediately sought to intervene at that time.

Consideration of Hartford's conflict of interest argument requires that we look to the applicable principles of insurance law. Generally, an insurer is required to defend an action against its insured whenever the complaint alleges facts potentially within coverage of the policy. This is true even where the insurer's own investigation reveals such allegations to be false. (*Thornton v. Paul; Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) Where an insurer wrongfully refuses to defend its insured it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee. *Thornton v. Paul.*

There is an exception to the general rule, however, where a conflict of interest exists between the insurer and its insured. In such case the insurer is not permitted to participate in the defense itself. Instead, its obligation to provide a defense is satisfied by reimbursing the insured for the costs of independent counsel. (*Thornton v. Paul.*) Furthermore, the insurer's rightful refusal to participate in the defense of such an action does not estop it from raising the defense of noncoverage in a subsequent proceeding. (*Thornton v. Paul.*) Therefore, since the insurer is not bound by the order in the action against the insured, it is not entitled to intervene as a matter of right. *Home Insurance Co. v. Lorelei Restaurant Co.*

▪ In effect, Hartford's argument is that it had a conflict of interest with Northern which prohibited Hartford not only from participating in Northern's defense but also from intervening. We reject this argument because we fail to find a conflict of interest. Both *Thornton* and *Lorelei* are distinguishable in that regard.

In *Thornton* the defendant putative insured was charged with both negligence and battery. Battery was outside policy coverage. Although both the insurer and the insured would have benefited from a finding that the insured was not liable at all, the insurer's interests would have been just as well served by a finding that the insured committed a battery. Such a finding would obviously have been in conflict with the insured's best interests.

Similarly in *Lorelei* the complaint against the insured alleged both negligent and intentional acts on the part of the insured, the latter of which were outside policy coverage. Again the court found a conflict of interest where the insurer had an interest in proving a set of facts which would have had the effect of subjecting the insured to greater liability.

Hartford here had an interest in showing that plaintiff's injuries were not covered by Northern's policy with Hartford. To this end it may have attempted to show that such injuries were unrelated to any work done by O'Brien for Northern. Unlike *Thornton* and *Lorelei*, however, such a showing would not have been in serious conflict with Northern's best interests; nor would it have subjected Northern to greater liability.

The charges are contradictory as to whether O'Brien or Morrison built the scaffold. In either case, however, Northern could have also been subject to liability since more than one party may be in charge of the work and thus liable. Although Northern may have been able to seek active-passive indemnity from the prime contractor who built the scaffold, such indemnification could have been sought from Morrison, if it were the actively negligent party, as well as from O'Brien. Morrison's payment of workmen's compensation to plaintiff did not insulate Morrison from third-party suits for indemnification with regard to liability for plaintiff's injuries. *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.

The authorities are divided as to whether a construction company's purchase of liability insurance to cover the property owner, pursuant to the company's contractual obligations, bars a suit for indemnification by the owner against the company. (Compare *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 408 N.E.2d 1129, with *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032.) Again, however, O'Brien and Morrison are similarly situated in that regard since both purchased such insurance for Northern pursuant to contractual obligations.

■ The only real detriment to Northern from a finding that O'Brien was not involved would be that Northern could not look to Hartford for coverage. It is clear, however, that an insurer's interest in negating policy coverage does not in itself create a sufficient conflict to excuse the insurer from conducting the defense. (*Maneikis v. St. Paul Insurance Co.* (7th Cir. 1981), 655 F.2d 818.) A contrary holding would not only overturn the estoppel rule set forth in *Sims v. Illinois National Casualty Co.*, but would in effect nullify the insurer's contractual obligation to defend whenever it could show potential application of some policy exclusion.

■ We also reject Hartford's contention that the petition was timely because it was unaware, prior to settlement and dismissal, that its interests were not being adequately represented. Hartford was long aware of the diverse interests of the parties involved. We find that Hartford has failed to show that it exercised reasonable diligence

in seeking intervention.

Since we find that the trial court properly denied Hartford's petition to intervene, we need not address the substance of Hartford's motion to vacate a portion of the dismissal order.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.