**TEWS FUNERAL HOME, INC.,**
**Plaintiff-Appellant,**

v.

**OHIO CASUALTY INSURANCE COMPANY, Defendant-Appellee.**

Nos. 86–2376, 86–2377.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1987.

Decided Nov. 2, 1987.

As Amended Nov. 6, 1987.

Paul J. Petit, Betar & Petit, P.C., Chicago, Ill., for plaintiff-appellant.

Robert Marc Chemers, Pretzel & Stouffer, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and WOOD and POSNER, Circuit Judges.

PER CURIAM.

The plaintiff in this case, Tews Funeral Home, Inc., an Illinois corporation, was named as a defendant along with thirty-seven other defendants in a nine-count antitrust damage action brought by nine plaintiffs in the Northern District of Illinois.[1] Tews tendered its defense in this underly-

---

1. The underlying case is entitled *Cedar Park Funeral Home, Inc. v. Illinois Funeral Directors' Ass'n,* No. 85 C 2137. As of the date this opinion was being prepared, the underlying action was still pending at the discovery stage in the district court.

ing action to its insurer Ohio Casualty Insurance Company under Ohio's Commercial Umbrella Liability Insurance policy. Because of a dispute which arose between Tews and Ohio about coverage, representation, and the counsel fees that might be generated in Tews's defense, Tews filed this diversity action to obtain a declaration of Tews's and Ohio's rights under the policy.

Subsequently Tews and Ohio filed cross motions for judgment on the pleadings. Chief Judge Grady of the Northern District of Illinois resolved all issues in a thorough and careful unpublished Memorandum Opinion dated July 17, 1986. Tews's motion was granted in part and denied in part, and Ohio's motion was denied. Judgment was entered accordingly on August 8, 1986.

 Because Chief Judge Grady's Memorandum Opinion correctly resolves the issues as we view them, and seeing no need to rewrite his opinion for our purposes, we adopt it as the opinion of this court, and add only a few additional comments.[2]

Like Chief Judge Grady, we find that Ohio has a duty to defend, notwithstanding its protestations to the contrary. Ohio argues that its policy does not apply to any of the allegations of the underlying complaint because the complaint alleges only intentional conduct. Intentional wrongful conduct, Ohio argues, is not covered under the policy. Chief Judge Grady's opinion sufficiently answers Ohio's narrow reading of the policy that it drafted.

Since we hold Ohio has a duty to defend Tews we must then consider whether or not a conflict of interest exists between Tews and Ohio so as to justify permitting Tews to conduct its own defense at Ohio's expense. Chief Judge Grady's opinion also sufficiently answers Tews's fears on this score. The possible liability and coverage under the policy of the claims alleged in the underlying complaint cannot yet be determined so as either to permit Ohio to escape its defense responsibilities, or to determine

the sure existence of a conflict of interest. We will not anticipate that counsel selected by Ohio at its expense will violate the strict fiduciary duty owed to both Tews and Ohio.

At oral argument before this court counsel for Ohio indicated that Ohio might be willing to modify its position regarding its choice of counsel to defend Tews. Counsel suggested that Ohio might select and submit to Tews a short list of reputable counsel from the area, qualified and competent in cases similar to the underlying *Cedar Park* case, any one of whom would be acceptable to Ohio. From that list Tews could then select counsel to defend it, and also protect the interests of Ohio as well. That appears to be a reasonable compromise between the positions heretofore taken by both parties.

We fully affirm the judgment of the district court, but remand only for the limited purpose of giving the district court and the parties the good faith opportunity to expeditiously explore this alternate method of counsel selection. Circuit Rule 36 shall not apply.

AFFIRMED AND REMANDED.

## APPENDIX 1

### MEMORANDUM OPINION

This diversity case is before the court on the parties' cross motions for judgment on the pleadings. We grant the motion of plaintiff Tews Funeral Home, Inc. ("Tews") and deny the motion of Ohio Casualty Insurance Company ("Ohio") for the reasons stated below.

FACTS

The parties agree on the following facts. Ohio issued to Tews a comprehensive general liability policy. On March 14, 1985, within the policy period, Tews was named as a defendant in a case assigned to Judge Marshall of this court, *Cedar Park Funeral Home v. Illinois Funeral Directors' Association*, No. 85 C 2137. Tews promptly notified Ohio of the suit and asked Ohio

---

**2.** A copy of Chief Judge Grady's Memorandum Opinion is attached hereto in the Appendix and made a part hereof.

to indemnify it against all liability. Ohio informed Tews that it had retained an attorney for Tews but was conducting the defense under a reservation of rights, stating that it might later disclaim coverage should Tews be found liable. Tews retained independent counsel who wrote Ohio asking it to acknowledge its duty to pay the fees and costs of the independent counsel in defending the suit, and further asking Ohio to recognize that Tews, through its independent counsel, had a right to control the *Cedar Park* litigation. Ohio refused both demands. Tews filed this declaratory judgment action regarding its rights and Ohio's duties. Ohio filed a declaratory counterclaim. Both parties moved for judgment on the pleadings. After those motions were fully briefed and while they were under our consideration, Judge Marshall dismissed the Cedar Park Complaint without prejudice. The *Cedar Park* plaintiffs then filed an amended complaint (the "Amended Cedar Park Complaint"). Ohio amended its counterclaim to address the Amended Cedar Park Complaint. Both Tews and Ohio have filed supplemental memoranda requesting judgment on the pleadings.

The *Cedar Park* plaintiffs are various funeral homes and funeral directors' associations who are "engaged in virtually all aspects of the funeral, burial and cemetery industry." Amended Cedar Park Complaint, Preliminary Statement at 3. They sell merchandise at wholesale to other businesses and individuals within the industry. They also sell merchandise and services to the general public, both on an "at-need" basis, i.e., sales made at the time of death, and on a "pre-need" basis, i.e., sales made in advance of death. The Amended Cedar Park Complaint also alleges that "[c]ertain of the plaintiffs are participants in joint cemetery/mortuary operations established

to provide the general public with innovative cost-saving alternatives to historical ... methods of marketing [funeral and cemetery] merchandise and services." *Id.*

Tews and the other named defendants are accused, generally, of conspiring with one another in an attempt to maintain artificially high prices for their "historical" funeral and burial services and products. The Amended Cedar Park Complaint also accuses them of conspiring to discourage or prevent consumers from buying "cost-saving" alternative products and services from the *Cedar Park* plaintiffs. Tews and the other named defendants are accused of conspiring to make "false, misleading and defamatory" statements "disparaging" the *Cedar Park* plaintiffs' services and products "with the expressed interest of discouraging" consumers from buying the *Cedar Park* plaintiffs' products and services. Count I, ¶¶ 54(t), (u); Count II, ¶ 57; Count III, ¶¶ 53–55; Count IV, ¶¶ 52–54; Count VII, ¶ 54; Count VIII, ¶ 54; Count IX, ¶ 54. The *Cedar Park* plaintiffs allege these statements give rise to liability under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; the Illinois Antitrust Act, Ill.Rev. Stat. ch. 38, §§ 60–3(2), (3); and under common law for interference "with plaintiffs' right to pursue a lawful business." In addition, Tews and the other named defendants are accused of "wilfully ... disparag[ing] the goods, services or business of plaintiffs by" providing consumers with "false and misleading information" in violation of the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 312(8); the Conswner Fraud Act, Ill.Rev.Stat. ch. 121½, § 261; and common law for interference with potential and existing contractual relationships. Count V, ¶¶ 51(c), (d); Count VI, ¶¶ 51(c), (d); Count VII, ¶¶ 51(c), (d); Count VIII, ¶¶ 51(c), (d).[1] The statements

---

1. More specifically, the Amended Cedar Park Complaint breaks down into three sets of operative facts. In the first set of operative facts, Tews is accused of making false, misleading and defamatory statements to the plaintiffs' actual and potential customers, disparaging the plaintiffs' merchandise and services for purposes of discouraging consumers from buying merchandise and services from plaintiffs. Tews is also

accused of making false and misleading statements to consumers about nonrefundable merchandise and services those consumers already had purchased from the plaintiffs. The complaint alleges that Tews made the latter statements with the "expressed intent" of discouraging consumers from using the plaintiffs' services and merchandise and inducing those consumers to purchase the same services and merchandise

by Tews and the other named defendants were apparently made in advertisements attached as exhibits to the Amended Cedar Park Complaint.

Tews claims that, regardless of whether Ohio has a duty to indemnify Tews for any damages that might eventually arise out of the Amended Cedar Park Complaint, Ohio has a duty to defend Tews because the claims are potentially within the scope of coverage under Ohio's policy. Tews argues that the allegations in the Amended Cedar Park Complaint involving the Uniform Deceptive Trade Practices Act, the Consumer Fraud Act, and the common law claims for interference with existing and potential contracts and the right to run a lawful business are claims for unfair competition based solely on defamation, invoking four different legal theories. Thus, Tews argues that Ohio's policy potentially provides coverage [2] as the allegations constitute an "advertising offense" [3] or a "personal injury" [4] within the meaning of the policy. Finally, Tews argues that Ohio has a conflict of interest with Tews and that Tews should be allowed to appoint independent counsel to control the litigation and to be reimbursed by Ohio.

from Tews and the other defendants. Count I, ¶¶ 54(t), (u). The first set of operative facts allegedly gives rise to liability under Section 1 of the Sherman Act and Section 60–3(2) of the Illinois Antitrust Act for engaging in a combination or conspiracy in restraint of trade (Count I, ¶¶ 54(t), (u) and Count III, ¶ 53); Section 2 of the Sherman Act and Section 60–3(2) of the Illinois Antitrust Act for attempting to monopolize or perpetuate a monopoly (Count II, ¶ 57 and Count IV, ¶¶ 52–54); and Illinois common law for engaging in a conspiracy to prevent plaintiffs from pursuing a lawful business (Count IX, ¶ 51).

In the second set of operative facts, the Amended Cedar Park Complaint alleges, among other things, that defendants attempted to ensure that a maximum percentage of funeral, burial and cemetery services would be purchased

> from funeral houses that are not participants in joint cemetery/mortuary operations, rather than at cost savings from cemeteries or from funeral houses that are participants in joint cemetery/mortuary operations; to prevent introduction to and use by consumers of combination casket/vault burial units; and to maintain artificially high price levels for funeral and burial merchandise and services.

Count II, ¶ 56. This set of operative facts allegedly gives rise to liability for attempted monopolization under Section 2 of the Sherman Act and Section 60–3(3) of the Illinois Antitrust Act (Count II, ¶ 56 and Count IV, ¶¶ 52–54).

In the third set of operative facts, Tews is accused of wilfully disparaging the plaintiffs' goods, services or businesses by providing consumers, including actual and potential customers of plaintiffs, with "false and misleading information regarding the quality of the services and merchandise provided by plaintiffs, including the competence and qualifications of funeral directors, sales personnel and other individuals employed by plaintiffs." Count V, ¶¶ 51(c), (d). This set of operative facts allegedly gives rise to liability under the Uniform Deceptive Trade Practices Act (Count I, ¶¶ 51(c), (d)); the Consumer Fraud Act (Count VI, ¶¶ 52(c), (d)); and Illinois common law for interference with existing and prospective contractual relations (Count VII, ¶¶ 51(c), (d) and Count VIII, ¶¶ 51(c), (d)).

Apparently the *Cedar Park* plaintiffs have joined Tews in the Amended Complaint based solely on a *respondeat superior* theory, i.e., that Tews employs members of the Illinois Funeral Directors' Association who apparently sponsored some of the advertisements attached to the Amended Complaint.

2. Under Ohio's policy, Ohio agreed to indemnify Tews for the ultimate net loss in excess of the retained limit herein stated which the Insured shall become legally obligated to pay as damages because of

> (A) personal injury or
> (B) property damages or
> (C) advertising offense

to which this policy applies, caused by an occurrence. Complaint, Exhibit A at 14.

3. "Advertising offense" is defined in the policy as:

> Libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights or privacy, arising out of the Insured's advertising activities....

Complaint, Exh. A at 14.

4. In relevant part, the policy defines "personal injury" as:

> (c) the publication or utterance of a libel or slander or of other defamatory material, including disparaging statements concerning the condition, value or quality or use of real or personal property, or a publication or utterance in violation of rights of privacy, *except when any of the foregoing of this part (c) arises out of the Insured's advertising activities* ....

Complaint, Exh. A at 14 (emphasis added). Interestingly, while the policy defines "advertising offense," it does not define "advertising" or "advertising activities."

Ohio argues that the Amended Cedar Park Complaint, like the original Cedar Park Complaint, alleges only intentional conduct. Because its policy insures only against "occurrences,"[5] which are defined by the policy as instances of non-intentional conduct, Ohio argues there is no possibility of coverage.[6]

DISCUSSION

*A. The Duty to Defend*

In Illinois, an insurer has only three options when its insured requests it to defend a third party action which the insurer believes to be outside the scope of the policy. The insurer can:

(1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.

*Maneikis v. St. Paul Ins. Co. of Illinois,* 655 F.2d 818 (7th Cir.1981). The insurer's duty to defend is broader than its duty to indemnify, and the insurer may be obligated to defend against actions which are not in fact covered under its policy. *Conway v. Country Casualty Ins. Co.,* 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (1982); *Nandorf v. CNA Ins. Companies,* 134 Ill. App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988, 991 (1st Dist.1985). The insurer has an obligation to defend if the allegations in the underlying lawsuit are even *potentially*

within the scope of the policy. *Maneikis, supra,* 655 F.2d at 822; *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1184 (7th Cir.), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *LaRotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 42 Ill.Dec. 219, 408 N.E.2d 928, 933 (1st Dist. 1980). While somewhat vague, "potentially covered" means that "the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery." 7C J. Appleman, *Insurance Law & Practice* § 4683.01 at 67 (1979). As long as only one of the many grounds for recovery is potentially covered by the policy, the insurer must provide a defense against the entire complaint, even if one or more theories of recovery are specifically excluded under the policy. *Id.,* § 4684.01 at 102, 106 ("the insurer is obligated to provide a defense against the allegations of covered as well as noncovered claims"). *Cf. American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985) (applying Pennsylvania law) (even though insured and insurer agreed certain allegations were not covered, insurer was obligated to defend insured until it could "confine the possibility of recovery to claims outside the coverage of the policy"). We must resolve any doubts as to coverage in favor of the insured. *Maneikis, supra,* 655 F.2d at 822.

---

5. Occurrence is defined as:
 an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage or advertising offense neither expected nor intended from the standpoint of the Insured during the policy period.
 Complaint, Exh. A at 14.

6. Ohio also argues that an "advertising offense" is not involved on the face of the pleadings. We think, however, that the exhibits attached to the Amended Cedar Park Complaint sufficiently show that the Cedar Park plaintiffs potentially are complaining about Tews' advertising activities.
 In addition, Ohio argues that because the original Cedar Park Complaint (and, presumably, the Amended Complaint) seeks punitive damages expressly and in the form of treble dam-

ages, it would violate public policy to allow Tews to obtain insurance for such damages. Given our holding today that the facts of the Amended Cedar Park Complaint show potential coverage for at least the common law counts, giving rise to Ohio's duty to defend, it is unnecessary to address this issue now. It may be appropriate to address the issue when and if we determine Ohio's duty to indemnify. *See infra* at 1046–1047.
 Finally, Ohio argues that the Original Cedar Park Complaint (and, presumably the Amended Cedar Park Complaint) seeks recovery solely for "economic losses" which cannot be recovered under a "property damage" provision of a general liability insurance policy. Tews, however, has not claimed that the "property damage" provision applies, so we will not address this argument.

Finally, in interpreting Ohio's policy, we must employ the well recognized rules of insurance contract construction. We must seek to find the intent of the contracting parties, *Playboy Enter. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 428 (7th Cir.1985), giving unambiguous language its plain, ordinary and popular meaning, while construing all ambiguous language in favor of the insured. *Id.; State Farm v. Moore*, 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641, 646 (2d Dist.1981).

Only one Illinois case has addressed an insured's duty to defend an insured against an underlying antitrust suit with common law unfair competition claims. *Pleasure Driveway & Park District of Peoria v. Aetna Casualty & Surety Co.*, 80 Ill. App.3d 1093, 36 Ill.Dec. 231, 400 N.E.2d 651, 652–53 (3d Dist.1980). The court held the insurer had no duty to defend. The case is distinguishable, however, because the court based its decision on a policy exception excluding coverage for damages arising from "employment" decisions. The court did not construe policy provisions such as "advertising offense" and "personal injury," *see supra* notes 2–3, in light of the underlying complaint and the decision is, therefore, of little assistance. Accordingly, we will look to decisions from other jurisdictions.

State courts from other jurisdictions have held that insurers do have a duty to defend their insureds against antitrust suits that also allege other common law business torts where the insurer has issued a general liability insurance policy. *Ruder & Finn, Inc. v. Seaboard Casualty Co.*, 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981); *CNA Casualty Co. of California v. Seaboard Surety Co.*, 176 Cal. App.3d 598, 222 Cal.Rptr. 276 (1st Dist. 1986). *See also Jefferson-Pilot Fire & Casualty Co. v. Booth, Prichard & Dudley*, 638 F.2d 670, 674–75 (4th Cir.1980) (Virginia law imposed upon insurer duty to defend insured law firm against antitrust suit under professional malpractice policy because alleged antitrust violations could be construed as "arising out of" professional services.). For example, in *Ruder & Finn*, the insurer had issued a "libel poli-

cy" to the insured, a public relations firm. The policy obligated the insurer to pay for all damages resulting from a "libel, slander, defamation or ... unfair competition" claim. 439 N.Y.S.2d at 859 n. 2, 422 N.E.2d at 519 n. 2. A manufacturer of aerosol products filed a federal suit against the insured and other defendants alleging violations of federal antitrust laws as well as "false disparagement" of the antitrust plaintiff's products. The suit alleged that the insured and its co-defendants had engaged in an "anti-aerosol" campaign in order to force the manufacturer to hire the insured to combat the negative publicity surrounding aerosol products. The District Court for the Southern District of New York dismissed the complaint. The manufacturer then filed a second suit in state court alleging a conspiracy to drive the manufacturer out of business. The state suit did not contain a false disparagement claim, however. The second suit was also dismissed for failure to state a claim.

The insurer had refused to defend the public relations firm in either case and the insured subsequently filed suit to recover the attorneys' fees and costs it incurred in defending against the manufacturer's suits. The New York Court of Appeals held that the insurer had a duty to defend its insured against the federal but not the state suit. According to the court, the crucial distinction was that the federal suit "painted a picture which, had it been established, conceivably could have subjected defendant's insured and its codefendants to liability for commercial disparagement." *Id.* at 862, 422 N.E.2d at 523. There was no duty to defend the subsequent state suit because the claim of commercial disparagement had been dropped. Moreover, the court noted that the manufacturer's state complaint failed to state a cause of action in New York for commercial defamation or unfair competition.

California courts similarly emphasize the allegations of common law business torts when determining whether an insurer must defend an insured against a complaint containing antitrust allegations. *CNA Casualty, supra*, 222 Cal.Rptr. at 276. In *CNA*

*Casualty,* the insured, a credit card clearinghouse, had obtained comprehensive general liability insurance policies from four separate insurers over a period of years. A suit was filed in federal court against the insured alleging federal antitrust violations and intentional interference with contractual relationships under California common law. The federal district court dismissed the pendent state claim. The insured subsequently tendered defense of the remaining antitrust suit to the insurers. Three of the insurers refused to defend. A fourth, CNA, defended the insured and later brought an action against the other three insurers to recover costs of that defense. The court rejected the three recalcitrant insurers' claim that they had no duty to defend. The court held a duty to defend did exist because the *facts* of the third party's complaint gave rise to the potential of liability under the policies. 222 Cal. Rptr. at 280. The court noted that two subparagraphs of the antitrust suit alleged that the insured had:

> (m) Intentionally issued and caused the issuance of statements misrepresenting the business, property and rights possessed by plaintiffs to persons with whom plaintiffs did business in an effort to disrupt and prevent the relationships and reasonably anticipated relationships between plaintiffs and said persons....
>
> (o) ... [M]ade intentional misrepresentations of fact to plaintiffs in an effort to further eliminate the competition of plaintiffs and for the express purpose of delaying and obstructing plaintiffs' access to legal remedy....

222 Cal.Rptr. at 281 n. 3 (elipses [sic] and brackets original). With respect to the claims in subparagraph (m) that the insured intentionally disrupted and prevented the antitrust plaintiffs' business relationships, the court held that the "unfair competition, libel, slander or other defamatory or disparaging material" provisions in the various insurers' policies "potentially covered" these allegations. *Id.* at 281. Finally, with respect to the allegations in subparagraph (o) that the insured made misrepresentations to eliminate the antitrust plaintiff as a competitor, the court held

that these allegations were "arguably within" coverage of one insurer's policy provision for piracy, unfair competition and idea misappropriation. *Id.*

█ Here, the Amended Cedar Park Complaint essentially alleges that Tews made "false, misleading and defamatory" statements about the plaintiff's business generally and products and services specifically. These statements, assuming the facts as alleged to be true, could give rise to liability for interference with the *Cedar Park* plaintiffs' "right to pursue a lawful business" as well as liability for antitrust violations. Further, Tews is alleged wilfully to have provided consumers with "false and misleading information" disparaging plaintiffs' goods, services and business in violation of the Uniform Deceptive Trade Practices Act, the Consumer Fraud Act and the common law pertaining to interference with potential and existing contractual relationships. These statements were apparently made in various advertisements sponsored by the Illinois Funeral Directors' Association, of which Tews is a member. (The Amended Cedar Park Complaint does not specify where or when these advertisements appeared.) Under Illinois law, such allegations are sufficient to state a cause of action for libel *per se,* libel *per quod* and tortious interference with contractual relationships. *See Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.,* 120 Ill.App.3d 254, 75 Ill. Dec. 947, 458 N.E.2d 115 (1st Dist.1983) (mere allegations not sufficient to survive summary judgment motion, however). And, like the insurers in both *Ruder & Finn* and *CNA Casualty,* Ohio's policy explicitly insures for damages arising from claims for "libel, slander, defamation ... [and] unfair competition ... arising out of Tews advertising activities...." *See* note 3 *supra.* Thus, we think that the Amended Cedar Park Complaint sufficiently alleges common law business torts which are potentially covered by Ohio's policy.

Before reaching the conflict of interest issue, however, it is necessary to address Ohio's argument that its policy explicitly excludes coverage for the types of dam-

ages allegedly suffered by the *Cedar Park* plaintiffs. Ohio argues that, even assuming the actions complained of in the Amended Cedar Park Complaint fall within the policy's coverage provision for "advertising activities," its policy excludes coverage for intentional acts. It argues that only those advertising activities giving rise to "an occurrence," defined as an unintentional act by the insured, *see supra* note 5, are covered. Further, because libel and slander are intentional torts, and tortious interference with contractual relationships requires malice or wilfullness, coverage for these torts is excluded under the policy. We disagree.

Applying the well recognized rules of insurance contract construction and interpretation, *see supra* at 6, we think Ohio's policy is, at best, ambiguous with respect to its coverages or exclusions. "Advertising offense" is defined to include many torts that characteristically require intent, maliciousness or wilfullness, such as libel, slander, defamation or the various forms of unfair competition. This language is plain and unambiguous and must be given its ordinary meaning. The ambiguity arises, however, when one looks at the definition of "occurrence," which states that only unintentional acts from the standpoint of the insured are covered. In effect, one part of Ohio's policy insures against intentional torts or acts, while another part of the policy attempts to exclude coverage for these same acts. We therefore must resolve this ambiguity against Ohio and hold that it must defend Tews against the Amended Cedar Park Complaint because its policy potentially covers the conduct alleged there. *See Grinnel Mutual Reinsurance Co. v. Frierdich*, 79 Ill.App.3d 1146, 35 Ill.Dec. 418, 399 N.E.2d 252, 253 (5th Dist.1979); *Cowan v. Insurance Co. of North America*, 22 Ill.App.3d 883, 318 N.E.2d 315 (1st Dist.1974) (clauses or terms such as "occurrences" are ambiguous as a matter of law). *See also* Annot., 31 A.L. R.4th 957, 1125–30 (1984) and cases cited therein.

### B. Conflict of Interest

Having determined that Ohio must defend Tews, we must next determine whether a conflict of interest exists between Ohio and Tews which requires Ohio to permit Tews to appoint independent counsel at Ohio's expense to control the litigation. Tews argues that, because Ohio filed a declaratory counterclaim, asserting that it had no duty to defend Tews, a conflict of interest exists: because Ohio has denied coverage for all of the claims in the Amended Cedar Park Complaint, Tews argues that Ohio's interest would be advanced to the prejudice of Tews by a finding of liability on one or more of the claims as to which Ohio denies coverage. Therefore, Tews concludes, Ohio's interests would be served by a less than vigorous defense on some or all of the Amended Cedar Park Complaint. Memorandum in Support of Plantiff's Motion for Judgment on the Pleadings at 12; Plaintiff's Supplemental Memorandum on the Cross Motions for Judgment on the Pleadings at 8.

In response, Ohio apparently argues that a conflict between an insurer and its insured can exist only where an underlying complaint against the insured alleges negligence, which is covered by a policy, and intentional conduct, which is not covered or is excluded by a policy. Because the Amended Cedar Park Complaint alleges only intentional conduct, Ohio argues, there is no conflict, even if it has a duty to defend. Defendant's Memorandum of Law in Response to Plaintiff's Motion for Judgment on the Pleadings and in Support of Defendant's Cross-Motion for Judgment on the Pleadings at 12.

Normally, an insurer controls its insured's defense. Attorneys appointed by the insurer to represent the insured owe fiduciary duties to both the insurer and the insured. Where the interests of the insured and the insurer conflict, however, there is a danger that the attorney appointed by the insurer may find it financially advantageous to protect the insurer's interests. Therefore, Illinois courts allow an insured to appoint independent counsel to control the litigation where the parties' interests conflict. *See Nandorf, Inc. v. CNA*

*Ins. Cos.*, 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988, 991 (1st Dist.1985).

The Seventh Circuit has concluded that Illinois courts find a conflict only where the underlying action against the insured contains "a disputed issue which by its nature could only resolve into one of two mutually exclusive outcomes, one of which would benefit the insurer, one of which would benefit the insured." *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 825 (7th Cir.1981). The court offered the following examples: where the insured's fire is either caused by arson or negligence; where the insured kills her husband either intentionally or negligently; or where the insured's driver is either an agent or an independent contractor. In such instances, the insured and insurer share a common interest in a finding of no liability, but the insurer's interest is equally advanced by a finding of intentional conduct not covered by the policy. Nevertheless, the court held that no conflict existed where the attorney-insured had been accused of negligent conduct, which was covered by the policy, and intentional conduct (fraud), which was excluded by the policy. The court reasoned:

> Because fraud requires a greater burden of proof than malpractice, ... [the insurer's] interest would be more realistically served by a finding that [the attorney] was not guilty of any misconduct. It would be against [the insurer's] best interest to attempt to establish that [the attorney] breached his duties as an attorney because if [the underlying plaintiff] could not establish the heavy burden of proving that *every* wrongful act charged was fraudulent, he doubtless would be eager to prevail upon a finding of simple malpractice on some or all of the counts, thereby imposing liability on [the insurer].

*Id.* (emphasis original).

One subsequent Illinois appellate court decision apparently has disagreed with *Maneikis'* test of when a conflict exists. *Nandorf, supra*, 88 Ill.Dec. at 968, 479 N.E.2d at 988. There, the court explicitly noted that Illinois courts are not governed by decisions of federal courts. Further,

the court noted that the Illinois Supreme Court has never explicitly held that a conflict exists only where an insured is accused of both negligent and intentional conduct but covered only for negligence. Thus, the court stated:

> In determining whether a conflict of interest exists, Illinois courts have considered whether, in comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those allegations. An insurer's interest in negating policy coverage does not, in and of itself, create sufficient conflict of interest to preclude the insurer from assuming the defense of its insured. However, conflict of interest has been found where the underlying action asserts claims that are covered by the insurance policy and other causes which the insurer is required to defend but asserts are not covered by the policy.

*Id.* at 972, 479 N.E.2d at 992 (citations omitted). The court concluded that the defendant-insurer "had an interest in providing a less than vigorous defense" where it was "not inconceivable" its insured could be found liable for a small amount of compensatory damages, which the insurer admitted would be covered by the policy, and a large amount of punitive damages, which the insurer argued would not be covered by the policy. Thus, their interests conflicted because the insurer's "failure to defend ... allegations [supporting a punitive damages award] would have had the effect of subjecting its insured to greater liability." *Id.*

The instant case does not present the type of conflict outlined by *Maneikis* or *Nandorf*. As Ohio correctly points out, Tews is accused of intentional or malicious conduct in every count of the Amended Cedar Park Complaint. Unlike *Maneikis* and the cases which it construed, however, we have held that such conduct probably is not excluded and potentially may be covered by Ohio's policy. And, although the *Cedar Park* plaintiffs have claimed large amounts of punitive damages ($25 million in each of the pendent counts as well as treble damages in antitrust counts), this case is distinguishable from *Nandorf* be-

cause it is conceivable the *Cedar Park* plaintiffs' request for compensatory damages "as proven" might result in a large award of compensatory damages. Boiled down, then, Tews' only argument is that a conflict exists merely because Ohio has an interest in negating policy coverage in general as to every count in the underlying complaint. *Nandorf, supra*, 88 Ill.Dec. at 972, 479 N.E.2d at 992; *O'Bannon v. Northern Petrochemical Co.*, 113 Ill. App.3d 734, 69 Ill.Dec. 550, 447 N.E.2d 985, 989–90 (1st Dist.1983). Therefore, Ohio is entitled to control the defense of the *Cedar Park* litigation through attorneys of its choice.

### C. Duty to Indemnify

■ Ohio argues that we should determine whether it has a duty to indemnify, as opposed to defend, Tews for any liability which might eventually be imposed in the *Cedar Park* litigation. Illinois courts have clearly stated that such a determination is premature while the underlying action is pending if the indemnity decision would require a court to adjudicate facts in the underlying dispute. *Maryland Casualty, supra*, (sic) 355 N.E.2d [24] at 30; *Allstate Ins. Co. v. Gleason*, 50 Ill.App.2d 207, 200 N.E.2d 383, 387 (1st Dist.1964). Clearly, in order to determine whether Ohio has a duty to indemnify Tews in the *Cedar Park* litigation, we would have to determine at the very least the ultimate fact of whether Tews is responsible for the statements concerning the *Cedar Park* plaintiffs' services, products and businesses. This would have a collateral effect on the *Cedar Park* litigation and it would therefore be improper to make such a determination. The proper procedure is to dismiss without prejudice that part of Ohio's counterclaim requesting an adjudication of its duty to indemnify and to decide the issue, if necessary, after conclusion of the *Cedar Park* litigation. *See Management Support Associates v. Un-*

*ion Indemnity Ins. Co. of New York*, 129 Ill.App.3d 1089, 85 Ill.Dec. 37, 473 N.E.2d 405, 412 (1st Dist.1984) (reversing and remanding to trial court with instructions to enter judgment in favor of insured regarding insurer's duty to defend; court recited general rule and stated "therefore this court will not rule on whether [insurer] has a duty to indemnify").[7]

### D. Fees

■ In its original declaratory judgment complaint, Tews requested attorneys' fees and costs for bringing this declaratory action as well as attorneys' fees and costs for defending against the Cedar Park Complaint. Consistent with our decision today, Ohio has always had a duty to defend Tews against the *Cedar Park* plaintiffs' claims and, therefore, must reimburse Tews for the reasonable fees and costs incurred in that action to date. On the other hand, "Illinois law is well settled that an insured may not recover attorney's fees and costs for bringing a declaratory judgment against the insurer." *Tuell v. State Farm Fire & Casualty Co.*, 132 Ill.App.3d 449, 87 Ill.Dec. 469, 477 N.E.2d 70, 74 (2nd Dist. 1985) (collecting cases). Therefore, Tews' requests for its costs and fees in bringing this declaratory judgment action is denied.

### CONCLUSION

Judgment on the pleadings is granted in favor of Tews on its declaratory judgment action and Ohio's declaratory counterclaim to the effect that Ohio had and has a duty to defend Tews against the Original and Amended Cedar Park Complaints. There is no conflict of interest between Tews and Ohio, however, and Ohio may henceforth control the defense of the *Cedar Park* litigation and may appoint counsel to represent Tews. That portion of Ohio's counterclaim seeking a determination that it has

---

7. As we noted previously, Ohio has argued that its policy does not provide coverage for treble antitrust damages because they are punitive damages and it is against public policy to obtain insurance for punitive damages. Again, we do not think this issue is currently before us. Rather, the only issue before us is whether Ohio

must defend Tews against the Amended Cedar Park Complaint. The issue of whether Ohio's policy covers treble antitrust damages must be resolved only if Tews, in fact, is found liable for such damages. At that point, Ohio's duty to indemnify Tews must be resolved.

no duty to indemnify Tews is dismissed without prejudice. Tews is not entitled to attorneys' fees and costs for bringing this declaratory action, but is entitled to reasonable attorneys' fees and costs incurred in defending against the Original and Amended Cedar Park Complaint [sic]. Tews should submit a petition for fees in accordance with the format outlined in *In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983).

Counsel should submit a judgment order in accordance with this opinion by August 4, 1986.

DATED: July 17 1986

ENTER: /s/ John F. Grady
United States District Judge