Ray COUCH, III, Plaintiff,

v.

CRO–MARINE TRANSPORT, INC., a foreign corporation; and Berisford Metals Corporation, d/b/a Erlanger & Co., a foreign corporation; and Flanagan–New Orleans Stevedoring Co., a foreign corporation, Defendants.

BERISFORD METALS CORPORATION, d/b/a Erlanger & Co., Third Party Plaintiff,

v.

CENTRAL ILLINOIS DOCK COMPANY, Third Party Defendant.

No. 88–1265.

United States District Court, C.D. Illinois, Peoria Division.

Nov. 27, 1989.

David W. Stuckel, Harvey & Stuckel, Peoria, Ill., for plaintiff.

Daniel L. Johns, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for Berisford.

Gary Peplow, Heyl, Royster, Voelker & Allen, Peoria, Ill., for Central Ill. Dock.

Steven B. Belgrade, Belgrade & O'Donnell, Chicago, Ill., Richard E. Quinn, Quinn, Johnston, Henderson & Pretorius, Peoria, Ill., for Cro–Marine.

## ORDER

MIHM, District Judge.

Pending before the Court is Third Party Defendant Central Illinois Dock Company's Motion to Dismiss the Third Party Complaint. For the reasons stated herein that Motion is DENIED.

## BACKGROUND

Plaintiff Ray Couch III was an employee of the Third Party Defendant Central Illinois Dock Company (hereinafter "CIDC"). CIDC is engaged in the business of loading and unloading cargo from barges on the Illinois River, a process known as stevedoring. On December 14, 1987, various employees from CIDC were unloading steel, which Defendant/Counterplaintiff Berisford Metals Corp., d/b/a Erlanger & Co. (hereinafter "Erlanger") had shipped to Tazewell County on a barge owned by Defendant Cro–Marine Transport, Inc. (hereinafter "Cro–Marine"). Plaintiff was removing cargo from the hold of one of the barges. The crew with whom he worked consisted of supervisors and co-workers inside the barge and a crane operator who was operating a crane located on the dock. Part of the cargo which was being moved by the crane shifted and fell on Plaintiff's leg, causing the injury which is the basis of his complaint against Cro–Marine and Erlanger.

Defendant/Counterplaintiff Erlanger is the owner of the cargo which was being unloaded from the barge. Erlanger had contracted with CIDC to provide services and equipment for unloading the cargo from the barges and storing it until some later date. The cargo of steel which was being unloaded in Tazewell County at the time of the accident had been loaded onto the barge in New Orleans after arriving in the United States from some foreign port (apparently Brazil). Erlanger had not arranged for stevedoring in New Orleans. Instead, the stevedoring in New Orleans was performed by Defendant Flanagan–New Orleans Stevedoring Company.

The Plaintiff subsequently filed for benefits under the Illinois Workers Compensation Act, Ill.Rev.Stat., ch. 48, § 138.1 *et seq.* and has not pursued any remedy that he might have against his employer under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (hereinafter "LHWCA"). In addition, Plaintiff has brought this three count lawsuit. In Count I, Plaintiff alleges negligence against Cro–Marine, the owner of the barge, seeking compensation ($1,000,000) for his injuries. Count II seeks compensation from Erlanger, the cargo owner, alleging negligence. Count III seeks compensation for his injuries from Flanagan–New Orleans Stevedoring Co.

Erlanger has denied all allegations of negligence. However, in the event that this Court might find negligence, Erlanger has also filed a Third Party Complaint against Couch's employer, CIDC, in three counts. Count I sounds in contribution based on the alleged negligence of CIDC and seeks a pro rata allocation of any liability based upon relative degree of fault. Count II seeks common law indemnification based upon active/passive indemnity theories. Count III seeks liability based upon indemnification *ex contractu.*

Pending before the Court are CIDC's Motions to Dismiss the Third Party Complaint. The Motions are based upon CIDC's theory that third party complaints

seeking contribution or indemnification are barred by the LHWCA, which provides in § 905 an exclusive remedy against employers and thus prohibits either direct or indirect tort actions against the employer. Erlanger responds that § 905 does not act as a bar to suits for contribution or indemnification under the circumstances of this case.

The Motions to Dismiss raise four legal issues. First, the Court must determine whether there is a substantive right (federal or state) to contribution or indemnification where the party from whom such contribution is sought is the employer of the injured person.

The second question which arises is whether § 905(a) of the LHWCA should be read as barring such suits; if so, the Illinois Workers Compensation Act is inconsistent with the LHWCA and therefore preempted by it.

Finally, Count III alleges an implied contract from which employer liability to the cargo owner can be inferred. Two questions arise in this context: first, does § 905(a) act as a bar to an action for indemnification in the face of such a contract? Second, has such a cause of action been displaced by § 905(b)?

## DISCUSSION

### Count I: Contribution

At dispute is 33 U.S.C. § 905(a), a provision of the Longshore and Harbor Workers Compensation Act. Section 905(a), entitled Exclusiveness of Liability, provides in pertinent part:

(a) Employer Liability. The liability of an employer prescribed in § 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and *anyone otherwise entitled to recover damages from such employer* at law or in admiralty on account of such injury or death.... (Emphasis added).

In essence, CIDC argues that tortfeasors may not circumvent the exclusive remedy provision of § 905(a) by obtaining contribution from the employer. Erlanger con-

tends that the cases cited by CIDC in support of that proposition are factually distinguishable, and further that some lower courts have misinterpreted the Supreme Court interpretations of § 905.

Admiralty law is to a great extent judge-made law, *U.S. v. Reliable Transfer*, 421 U.S. 397, 409, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1979), and a longshoreman's maritime tort action against a ship owner has been recognized for quite some time. *See, Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 413–14, 74 S.Ct. 202, 207, 98 L.Ed. 143 (1953). Under maritime tort law, a longshoreman's award would be reduced by the portion of damages resulting from the longshoreman's own negligence, but the ship owner was liable in full for the remainder, even if some of the negligence was the stevedore's. *See, e.g., Cooper Stevedoring Co. v. Fritz Kopke Co., Inc.*, 417 U.S. 106, 108, 113, 94 S.Ct. 2174, 2175, 2178, 40 L.Ed.2d 694 (1974). This latter rule was in accord with general tort law which did not recognize a right of contribution among joint tortfeasors.

However, under admiralty law, this general rule of torts has been altered somewhat by the rule of division of damages. Under this rule, the owners of two vessels which collide are required to share equally the damages sustained by each. The only finding of fault required for application of this doctrine is that the collision resulted from the fault of each. Other than that finding, there is no investigation as to the relative amount of fault; once the finding has been made, the damages are divided equally.

In *Halcyon Lines v. Haenn Ship Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), the parties asked the Supreme Court to extend that doctrine to injuries which resulted from events other than a collision of two vessels. In *Halcyon*, the ship owner contracted with a shoreside repair company to repair the ship. An employee of the contractor was injured aboard the ship while making the repairs. Claiming that his injuries were caused by the ship owner's negligence, the employee sued the ship owner. In turn, the ship owner

claimed that the contractor's negligence had contributed to the employee's injuries and brought a third party complaint for contribution against the contractor/employer.

The Supreme Court noted both the general tort rule tending away from contribution among joint tortfeasors and the admiralty rule of division of damages. The Court went on to discuss the general judicial reluctance to create a right of contribution in the absence of legislation. In particular, the Supreme Court found that, in a field such a admiralty law where Congress has already legislated extensively, the Court should decline to create such a right of contribution; since there is no underlying statutory or common law authority for a ship owner's contribution action against an employer, the Court would not create one. The Court further noted that it was unnecessary to decide whether § 5 of the Harbor Workers Act (now § 905 of the LHWCA) prevented a third party from bringing a cause of action for contribution against the employer, since there was no substantive right to contribution in the first place. *Id.* at 286–87, 72 S.Ct. at 280.

A different set of facts was presented in *Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), where the third party complaint was not filed against the employer but against a different third party. The Court in *Cooper* extensively discussed its previous holding in *Halcyon*, noting that the decision must be read with the background discussed above kept in mind. The Court in *Cooper* held that "despite the occasional breadth of its dictum," *Id.*, 417 U.S. at 111, 94 S.Ct. at 2177, *Halcyon* did not hold that there is an absolute bar against contribution in a non-collision case. Instead, the *Cooper* Court held that *Halcyon* merely

found there was no federal common law substantive right of contribution against an employer.

The importance of finding a substantive right to contribution before determining whether § 905 acts as a bar in certain cases was underlined in the case of *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 197 n. 8, 103 S.Ct. 1033, 1038 n. 8, 74 L.Ed.2d 911 (1982). The Court in *Lockheed* discussed an exclusive liability provision in the Federal Employee Compensation Act (FECA), which is nearly identical to § 905, and discussed extensively developments in interpretations of that provision of the LHWCA. In a footnote, however, the Court noted that the procedural history of the *Lockheed* case had eliminated the need for the Court to determine whether there is a substantive right to contribution. (The district court had found there was such a substantive right. The matter had not been raised on appeal). Thus, the Court's ultimate decision in *Lockheed* that FECA's equivalent to § 905 may not act as a bar to a suit for contribution does not eliminate the necessity for first determining whether there is indeed a substantive right.[1]

■ The case before the Court raises the precise issue so far not directly confronted by the Supreme Court. The employee who is the Plaintiff in this case did not seek damages for his injuries under the LHWCA. Instead, he proceeded under the Illinois Workers' Compensation Act, Ill. Rev.Stat. ch. 48, § 138.1 *et seq.* Under Illinois law, a third party action for contribution against an employer who has made payments into the Workers' Compensation program is permitted. *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984). Thus, there is a substantive right

**1.** A number of circuit courts have merged the two step analysis, jumping back and forth between substantive right and procedural bar without much apparent thought. *See, e.g., Ketchum v. Gulf Oil Corp.*, 798 F.2d 159 (5th Cir. 1986); *Drake v. Raymark*, 772 F.2d 1007 (1st Cir.1985); *Zapico v. Bacyrus–Erie Co.*, 579 F.2d 714 (2nd Cir.1978). Indeed, even the Supreme Court appears to confuse the issues at times, *see Edmonds v. Compagnie Generale Transatlan-*

*tique*, 443 U.S. 256, 261, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979) (Court stated in dicta "We first held that the shipowner could not circumvent the exclusive remedy provision by obtaining contribution from the concurrent tortfeasor employer," citing *Halcyon* ). The Court declines to follow these cases since their reasoning is based upon a misreading of the meaning of *Halcyon*.

to contribution, and this Court must determine whether § 905(a) acts as a procedural bar.

■ Erlanger argues first that an action for contribution under the Illinois law is not inconsistent with the federal common law and should therefore be allowed to proceed. CIDC, however, argues that the Illinois law is contrary to explicit federal statute, namely § 905(a). Thus, according to CIDC, the Illinois law should be seen as inconsistent with § 905(a) and therefore preempted by it. CIDC's preemption argument can only prevail if § 905(a) does bar all actions, direct and indirect, against an employer. Then and only then would a state law allowing contribution actions against an employer be in direct conflict with and thus preempted by federal law.

In *Lockheed*, 460 U.S. 190, 103 S.Ct. 1033, the Supreme Court relied extensively upon § 905(a) in interpreting the similar exclusive liability provision of FECA. In analyzing and comparing the two provisions, the Court paid particular attention to Congress' "quid pro quo" approach; in workers compensation legislation generally, employees gain the right to receive immediate fixed benefits without need for litigation and regardless of fault. In return, they lose the right to sue their employer. *Id.* at 194, 103 S.Ct. at 1036.

The *Lockheed* Court based its decision in large part on *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), in which the Court considered FECA's exclusive liability provision and the legislative history of that section. In *Weyerhaeuser*, a federal employee was injured when an army dredge collided with a vessel owned by Weyerhaeuser. The employee recovered compensation under FELA from the government and tort damages from Weyerhaeuser. Weyerhaeuser then sued the United States for contribution, seeking the damages it could have recovered from a private ship owner under the Public Vessels Act, 46 U.S.C. § 781 *et seq.* The government challenged the action arguing that third parties were clearly included within the phrase "anyone other-

wise entitled to recover damages" in the exclusive liability provision of FELA.

The Supreme Court rejected this argument by first finding that the statutory language was ambiguous and thus subject to interpretation by resort to the legislative history of the provision. The Supreme Court concluded that, based on the *quid pro quo* nature of the legislation, the exclusive liability provision as a whole had been intended to govern only the relationship between the government on one hand and its employees and their representatives or dependents on the other. The *Weyerhaeuser* court summarized its review of the legislative history of the exclusive liability provision as follows:

> There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb subtle doctrines of admiralty law affecting the mutual rights and liabilities of private ship owners in collision cases.

*Lockheed*, 460 U.S. at 195, 103 S.Ct. at 1037, quoting *Weyerhaeuser*, 372 U.S. at 601, 83 S.Ct. at 928. *See also, Ryan Co. v. Pan–Atlantic Corp.*, 350 U.S. 124, 129, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956).

The language in *Lockheed* and *Weyerhaeuser* clearly indicates that § 905(a) should not stand as a bar to a cause of action in contribution should there otherwise be a substantive basis for it. Here, Illinois statutory law provides just such a basis. Thus, this Court adopts the interpretation given to § 905(a) by Supreme Court dicta in *Weyerhaeuser* and *Lockheed*. The language "anyone otherwise entitled" bars only actions by those seeking to recover through the employee; in other words, the examples listed in the statute all fall within a definable category and the catch-all language may not be read to broaden that category.

■ As a result, the Illinois law allowing suits for contribution from a joint tortfeasor/employer is not in conflict with any federal law. State law may supplement maritime law if the injury arose out of maritime conduct which has local characteristics. *Sun Ship, Inc. v. Common-*

*wealth of Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) (holding that LHWCA did not supplant state worker compensation laws). In this case, those local characteristics are present.

Thus the contribution claim against CIDC may proceed and the Motion to Dismiss Count I of the Third Party Complaint is DENIED.

*Count II: Indemnification*

In Count II, Erlanger's Third Party Complaint seeks indemnification from CIDC, based claim upon the distinction between active negligence and passive negligence.

Indemnification in tort seeks to shift the entire amount of liability from a defendant to a third party. Generally under tort law, "a person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful death of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." Restatement of Restitution, § 96, quoted in *Marine Terminals v. Shipping Co.,* 394 U.S. 404, 411, 89 S.Ct. 1144, 1148, 22 L.Ed.2d 371 (1968).

The question raised by the Motion to Dismiss Count II is whether that general tort cause of action is abrogated by the LHWCA. In other words, if § 905(a) does not bar a cause of action for indemnity, then traditional tort analysis regarding duty, breach of duty and subrogation become relevant. The only issue raised by the pending motions is whether § 905(a) is indeed a bar to an indemnity action brought by the owner of the cargo against the employer of the insured longshoreman. Thus, the analysis should be similar to the analysis employed for Count I: if there is a substantive right, then § 905(a) does not act as a bar.

■ Illinois law apparently allows third party actions against an employer for indemnification under the Workers' Compensation Act if the third party plaintiff was passively negligent and the employer was

actively negligent. *See, O'Bannon v. Northern Petro Chemical Co.,* 113 Ill. App.3d 734, 69 Ill.Dec. 550, 447 N.E.2d 985 (1983); *National Oats Co. v. Volkman,* 29 Ill.App.3d 298, 330 N.E.2d 514 (1975); *Krambeer v. Canning,* 36 Ill.App.2d 428, 184 N.E.2d 747 (1962).

In *Hillier v. Southern Towing Co.,* 714 F.2d 714 (7th Cir.1983), the court emphasized the importance of distinguishing between indemnification actions based on tort theories and those based on contract theories. There is a dearth of cases discussing admiralty tort claims for indemnification; the great majority are based in contract.

In *Hillier,* the Seventh Circuit discussed the paucity of cases seeking indemnification in the absence of a contractual relationship, concluding that the paucity "may just reflect the fact that most joint tortfeasors have a pre-existing contractual relationship, direct or indirect, with each other ..." *Id.* at 720. The court went on to state that availability of indemnification, even where contribution is available, is justifiable in policy.

> When the cheapest way of avoiding a careless accident is for one party to take all the precautions, the law needs a mechanism for bringing liability to bear ultimately on that party, and indemnity supplies it. Admiralty law, like common law, is concerned with safety and efficiency. The tendency to use tort liability to spread rather than to prevent losses may be stronger in admiralty than in the common law, but it is not so overpowering as to have prevented the courts from devising imaginative theories of indemnity in a variety of often tenuously contractual maritime settings.

*Id.* at 720–21.[2]

■ Furthermore, in admiralty law there is a distinction between indemnification and contribution. As noted earlier, admiralty law has modified the traditional tort law regarding contribution, tending to allow

---

**2.** The analysis in *Hillier* is not otherwise helpful because in that case the injured employee was a member of the military and the third party defendant was the United States. Thus, a great number of factors not present in the case before

this Court were dispositive in *Hillier.* But the parties have not really brought to the Court's attention any cases directly on point or which discuss this issue in dicta.

some form of contribution in certain circumstances. The same modification to indemnity law under admiralty is not to be seen. In other words, admiralty law concerning indemnification to a great extent parallels general tort law. Thus, where a defendant can show that culpability lies entirely with another party, a third party action for indemnification would be proper.

The lack of culpability of CIDC, however, is not the basis for the Motion to Dismiss before the Court; rather the basis for dismissal is asserted to be the bar presented by § 905. As in Count I, the Court holds that § 905 is not a bar. Thus Count II may proceed, and the Motion to Dismiss is denied.

*Count III: Contractual Indemnification*

CIDC's Motion to Dismiss Count III of the Third Party Complaint is based on both § 905(a) and § 905(b). Plaintiff argues that both limit third party actions against a stevedore/employer thus mandating dismissal.

In the case before the Court, it is worthwhile to restate the relationship between the parties since both § 905(a) and § 905(b) are so explicitly dependent upon who the parties are. Likewise, the cases discussing these two sections are fairly fact specific. In our case, the Third Party Plaintiff is the cargo owner and shipper; the Third Party Defendant is the stevedore/employer. There is no involvement of the ship owner in the Third Party Complaint.

> Section 905(b) reads in pertinent part: (b) Negligence of Vessel. In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action *against such vessel* as a third party ... and the employer shall not be liable *to the vessel* for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was *employed by the vessel* to provide stevedoring services no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services *to the vessel* ....

The first sentence of subsection (b) plainly refers only to actions against the vessel and thus has no relevance in a suit between the cargo owner and the stevedore. The second sentence has been limited by courts to circumstances in which the vessel owner itself hires its own employees to provide stevedoring services. It is inapplicable to situations in which the vessel owner hires a stevedoring company whose employees are providing stevedoring services.

In the case before the Court the injured employee worked for an independent stevedoring contractor and not for the vessel owner. Thus, § 905(b) has absolutely no relevance to the case before the Court.

Section 905(a), however, remains relevant. Courts have held that where a claim for indemnification arises from a contract, it does not arise "on account of injury" to the longshoreman and is thus not barred by § 905(a). For example, in *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir.1981), the court held that a suit for contract based indemnity would not be barred by § 905(a) where the plaintiff is able to offer evidence of either an express or implied contract for indemnification. Because § 905(a) only prohibits actions by a third party against the employer, "on account of" the injury or death of the employee, a suit for indemnification which arises from the breach of that contract does not arise from the injury itself but rather from the conduct of one of the contracting parties. Any recovery against the employer would be on account of the contract of indemnity and not on account of the injury. *Id.* at 386–87. *See also, Zapico v. Bucyrus–Erie Co.*, 579 F.2d 714, 722 (2nd Cir.1978) ("only contract-based indemnity could overcome the 'on account of' language of § 905(a).").

In *Ryan Co. v. Pan–Atlantic Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court held that § 905(a) did not preclude a ship owner's suit against an employer on the basis of contractual obligations, and that in the absence of a contractual agreement of indemnity, an employer/stevedore was obligated to reimburse a shipowner for damages caused by the stevedore's negligence.

█ It was the second holding and not the first which was invalidated by the 1972 Amendments to the LHWCA. Those amendments added § 905(b) and clearly modified obligations of the employer to the vessel owner. Section 905(a) was not modified by the 1972 Amendments. Thus, even though the facts in *Ryan* are distinguishable from the facts presently before the Court, *Ryan* still stands for the proposition that suits against an employer based on contract are not barred by § 905(a).

The Third Party Defendant points out that a number of courts have held that Congress specifically intended to cut off all circuitous indemnification against employers, citing to *Spadola v. Viking Yacht Co.,* 441 F.Supp. 798 (S.D.N.Y.1977), and *SS Sea Train Louisiana v. California Stevedore & Co.,* 424 F.Supp. 180 (N.D.Cal.1976). Both of those cases found that § 905(b) is not applicable exclusively to "vessels" and thus cuts off all circuitous indemnification, even that based on contract. The reasoning of these courts cannot withstand scrutiny, since they attempt to read into the statute a requirement which Congress has not seen fit to express. Because there is no *quid pro quo* between a non-vessel third party and a stevedore employer which has been affected by any workers' compensation scheme, the Court declines to expand the statute to that situation.

The Third Party Complaint alleges the existence of an implied contract with CIDC which imposed an obligation that CIDC "perform its services in a good and workmanlike manner." Amended Complaint ¶ 9. The Complaint goes on to allege that the accident directly resulted from a breach of that obligation in that CIDC failed to supervise the employees, failed to employ safe work practices, and failed to take reasonable precautions to secure cargo.

This claim is not barred by either § 905(a) or (b). The Motion to Dismiss Count III is accordingly denied.