Carge JOHNSON, Jr., et al., Plaintiffs,

v.

NATIONAL STEEL & SHIPBUILDING COMPANY, et al., Defendants.

**And All Consolidated Actions.**

Civ. Nos. 87–1361–G(M), 87–1362–G(M), 87–1363–G(M), 87–1453–G(M), 87–1716–G(M), 88–0141–G(M), 88–0142–G(M), 88–0202–G(M), 88–0294–G(M), 88–1025–G(M), 88–0788–G(M), 88–1029–G(M), 88–1028–G(M), 88–1024–G(M), 88–1011–G(M), 88–1010–G(M), 88–1001–G(M) and 88–1007–G(M).

United States District Court,
S.D. California.

July 3, 1990.

Alvin G. Kalmanson, National Steel & Shipbuilding, Sidney A. Stutz, Mark A. Schwartz, Stutz, Gallagher & Artiano, San Diego, Cal., for defendant Nassco.

Gerald R. Solomon, Maynard O. Kartvedt, El Cajon, Cal., for plaintiff Lila Joann Starke.

Janet E. Sobel, Susan C. Stevenson, Jennings, Engstrand & Henrikson, San Diego, Cal., for plaintiff Carlos Martin Ortiz.

John M. Schau, San Diego, Cal., for George Sumner.

Robert E. Couhig, Jr., Adams & Reese, New Orleans, La., Sterling Hutcheson, Regina A. Petty, Gray, Cary, Ames & Frye, San Diego, Cal., for defendant AMCA Intern. Corp.

David B. Oberholtzer, Post, Kirby, Noonan & Sweat, San Diego, Cal., for defendant Cleveland Mach. Controls.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

The motion by National Steel and Shipbuilding Company (NASSCO) for summary judgment came on for hearing in Courtroom 7 before the Honorable Earl B. Gilliam on June 4, 1990 at 10:30 a.m. Stutz, Gallagher · & Artiano (Sidney Stutz and Mark Schwartz of counsel) appeared for NASSCO, the moving party. Gray, Cary, Ames & Frye (Regina Petty of counsel) and Adams & Reese (Kirk Gasperecz of counsel) appeared for AMCA International Corporation (AMCA). Borton, Petrini & Conron (Roberta Fairbanks and David Olan of counsel) appeared for Microdot, Incorporated (Microdot). Post, Kirby, Noonan & Sweat (David Oberholtzer of counsel) appeared for Cleveland Machine Controls. Preston Easley appeared for the Johnson, Miller, Wilson, Pulley and Magana plaintiffs. Palmieri, Tyler, Wiener, Wilhelm & Waldron (Richard Rawls of counsel) appeared for the Unser plaintiffs. Jennings, Engstrand & Henrikson (Susan Stevenson of counsel) appeared for plaintiff Carlos Martin Ortiz. John Schau appeared for plaintiff George Sumner. Virginia Nelson

Preston Easley, San Pedro, Cal., for plaintiffs Johnson, Miller, Wilson, Pulley and Magana.

Rocky K. Copley, Borton, Petrini & Conron, San Diego, Cal., for defendants Microdot, Inc., Minnesota Liquidating, Inc.

L. Richard Rawls, Palmieri, Tyler, Wiener, Wilhelm & Waldron, Newport Beach, Cal., for Delda and Tyson Unser.

Kathleen Cuffaro, Law Offices of Virginia C. Nelson, San Diego, Cal., for Estrella and Delgadillo.

Mark D. Adelman, Law Offices of Mark Adelman, San Diego, Cal., for Patricia McClure.

James C. Holzmann, San Diego, Cal., for plaintiff Hugh C. Humphrey.

and Kathleen Cuffaro appeared for the Estrella and Delgadillo plaintiffs.

At the conclusion of the hearing, the court took NASSCO's motion under submission. The court now issues its ruling denying the motion for summary judgment without prejudice to renew. The court instead construes the motion as a motion to dismiss with leave to amend and hereby dismisses the cross-claims against NASSCO by AMCA, Minnesota Liquidating and Microdot.

## FACTS

On July 10, 1987, the U.S.S. Sacramento was shifted from a drydock to Berth 5 in NASSCO's shipyard. The operation was performed under the supervision of the United States Navy and a San Diego Harbor pilot. Plaintiffs and their decedents were employees of NASSCO with various duties relating to moving the U.S.S. Sacramento. After the U.S.S. Sacramento was shifted, a personnel basket was lowered by crane to retrieve the NASSCO employees to transport them to the dock. The personnel basket was attached to the whip line of a Clyde Whirley crane, C–W number 3864, NASSCO number 7 ("Crane No. 7"). As the basket moved over the U.S.S. Sacramento, it suddenly fell to the deck of the ship. Of the twelve workers in the basket, six were killed and six were injured.

Plaintiffs (the workers and their families) filed a complaint against various defendants under numerous theories, including the Jones Act, common law negligence, products liability and breach of warranty. The defendants have filed numerous cross-claims against each other. The defendants at issue in this motion are NASSCO, AMCA, Microdot, Minnesota Liquidating and Cleveland Machine Controls. As stated above, NASSCO was the employer of plaintiffs and their decedents at the time of the accident. Cleveland Machine Controls is a successor in interest to Randtronics, the company which allegedly manufactured and installed the control system for the

electric motor used to hoist the whip line of Crane No. 7.

The role of the other three defendants, Microdot, Minnesota Liquidating and AMCA, is somewhat more complicated. Crane No. 7 was manufactured by Clyde Iron Works, Inc. in 1964 or 1965. Sometime around 1970, Clyde Iron Works became a wholly-owned subsidiary of Microdot. In 1973, Microdot sold the business of Clyde Iron Works to Dombrico, Inc. Under the sales agreement, Microdot kept all of the sales proceeds and changed the name of Clyde Iron Works to Minnesota Liquidating Company. Minnesota Liquidating remained a shell corporation and for all intents and purposes ceased business activity. After purchasing Clyde Iron Works in 1973, Dombrico used the factory to continue to produce the same line of cranes under the name "Clyde Iron." AMCA is the successor corporation of Dombrico.[1]

AMCA, Microdot and Minnesota Liquidating have filed cross-claims against NASSCO for full or partial equitable indemnity, full or partial comparative indemnity and declaratory relief. NASSCO is seeking summary judgment on these cross-claims.

## DISCUSSION

■■■ NASSCO submits that the cross-claims for indemnity are barred by the exclusive liability provisions of the Longshore and Harbor Workers' Compensation Act (LHWCA). *See* 33 U.S.C.A. § 901 *et seq.* (West 1986 & Supp.1990). The LHWCA provides a workers' compensation scheme for maritime employees such as longshoremen and certain other harbor workers. *See* 33 U.S.C.A. §§ 902(3), 904. NASSCO has paid benefits to the deceased and injured workers and their families under the LHWCA, and it submits that those payments are the employer's exclusive liability. NASSCO relies on Sections 5(a) and 5(b) of the LHWCA for this proposition. Section 5(a) provides in pertinent part:

> The liability of an employer prescribed in section 904 of this title *shall be exclusive and in place of all other liability*

---

**1.** The issue of whether AMCA, Microdot or Minnesota Liquidating should be liable for cranes manufactured before 1973 has not yet been resolved.

of such employer to the employee, his legal representative ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty *on account of such injury or death ....* 33 U.S.C.A. § 905(a) (emphasis added). Section 5(b) provides in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, *may bring an action against such vessel as a third party* ... and the *employer shall not be liable to the vessel for such damages* directly or indirectly and any agreements to the contrary shall be void. 33 U.S.C.A. § 905(b) (emphasis added).

NASSCO correctly concedes that regardless of the LHWCA, it can be adjudged jointly and severally liable with the cross-claimants in the cases where plaintiffs or their decedents were seamen pursuant to the Jones Act, 46 U.S.C.A.App. § 688 (West 1975 & Supp.1990). *See Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1430–32 (5th Cir.1988), *reh'g denied,* 860 F.2d 1255 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Therefore, AMCA, Minnesota Liquidating and Microdot may allege valid contribution and indemnity claims in the five cases where NASSCO is named as a primary defendant under the Jones Act. Since coverage under the Jones Act and coverage under the LHWCA are mutually exclusive (see *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 243 (5th Cir. 1983), *reh'g denied* 710 F.2d 837 (5th Cir.), *cert. denied* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984)), this court must determine which of the cross-claims are proper against a maritime employer in non-Jones Act cases.

■ Similarly to the Jones Act, maritime tort law generally provides for joint and several liability among tortfeasors. An injured party may sue a tortfeasor under maritime law for the entire amount of damages even if other tortfeasors were concurrently liable. *See Edmonds v. Compagnie Generale Transatl.,* 443 U.S. 256, 259–60 & nn. 7–8, 99 S.Ct. 2753, 2755–56 & nn. 7–8, 61 L.Ed.2d 521 (1979), *reh'g denied,* 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979); *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974). "A concurrent tortfeasor generally may seek contribution from another, but he is not relieved from liability for the entire damages even when the nondefendant tortfeasor is immune from liability." *Edmonds,* 443 U.S. at 260–61 n. 8, 99 S.Ct. at 2756–57 n. 8 (citations omitted); *see also Miller v. Christopher,* 887 F.2d 902, 904 (9th Cir. 1989). The Supreme Court has indicated that the LHWCA does not change the judicially created rules for maritime liability except where Congress uses explicit language in the statute to do so. *See, e.g. Edmonds,* 443 U.S. at 271–73, 99 S.Ct. at 2762–63; *Cooper,* 417 U.S. at 112–13, 94 S.Ct. at 2177–78. Therefore, within the exceptions of the LHWCA, the cross-claimants may also allege third party claims against NASSCO in the cases where the plaintiffs properly state a cause of action against them under maritime tort law.

The confusion over the effect of the exclusive liability provisions of the LHWCA therefore begins where neither the Jones Act nor maritime law applies. For example, in *Edmonds,* the jury determined that an injured longshoreman was ten percent at fault during the incident that caused his injury, that the longshoreman's employer was seventy percent at fault and that the vessel owner was twenty percent at fault. *Edmonds,* 443 U.S. at 258, 99 S.Ct. at 2755. The trial court applied maritime law and required the vessel owner to pay ninety percent of the longshoreman's damages, without reduction or contribution. *Id.* The Supreme Court, affirming the district court's ruling, held that the explicit language of section 905(b) of the LHWCA prohibited the vessel owner from seeking contribution from the stevedore-employer and that despite the harsh result for the vessel owner, Congress did not intend to alter the established maritime rule of joint and several liability. *Id.* at 259–73, 99 S.Ct. at 2755–63. *See also Dodge v. Mitsui Shintaku Ginko K.K. Tokyo,* 528 F.2d 669,

671–73 (9th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). However, the *Edmonds* Court explicitly noted that "[its] decision does not necessarily have any effect on situations where [the LHWCA] provides the workers' compensation scheme but the third party action is not governed by principles of maritime law." *Edmonds,* 443 U.S. at 272 n. 31, 99 S.Ct. at 2762 n. 31.

Because of the lack of guidance from Congress or the Supreme Court regarding LHWCA employer liability to non-vessel third-parties in cases governed by state law, several lower courts have struggled with the issue presented in this motion. *See* Annotation, *Right of Tortfeasor Other Than Vessel Jointly Responsible with Stevedore or Other Employer for Injuries to Employee to Recover Indemnity from Employer Under Longshoremen's and Harbor Workers' Compensation Act,* 47 A.L.R. Fed. 416 (1980) (collecting and summarizing the caselaw). Most courts have refused to extend section 905(b)'s blanket prohibition of contribution and indemnity actions by vessel owners against employers to other types of third parties. The majority of cases have held that contribution or indemnity actions by non-vessels against the employer are not barred by the LHWCA .if they are based on either an express or implied contractual obligation between the third party and the employer, or an obligation in tort between the employer and the third party. *See, e.g. Couch v. Cro–Marine Transport, Inc.,* 725 F.Supp. 978 (C.D.Ill.1989); *Horton v. Sun Exploration and Production Co.,* 616 F.Supp. 130, 131 (W.D.La.1985) (citing *Pippen v. Shell Oil Co.,* 661 F.2d 378, 386–88 (5th Cir.1981)). *See also* M. Yeates, P. Dye & R. Garcia, *Contribution and Indemnity in Maritime Litigation,* 30 S.Tex.L.Rev. 215, 257–61 (1989).

Section 905(a) states that the liability of the employer "shall be exclusive ... to the employee, his legal representative, husband or wife ... and anyone entitled to recover damages from such employer at law or in admiralty *on account of such injury or death* ...." 33 U.S.C.A. § 905(a) (emphasis added). The majority of cases have

reasoned that nonvessel third party actions based on contractual indemnity are not barred by the statute because they do not arise "on account of" the injury or death of the employee, the actions are on account of the express or implied indemnity contract between the employer and the third party. *See, e.g. Pippen,* 661 F.2d at 386–87; *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 721–22 (2nd Cir.1978); *Horton,* 616 F.Supp. at 131; *Holden v. Placid Oil Co.,* 473 F.Supp. 1097, 1099–1100 (E.D.La.1979). Likewise, numerous courts have held that non-vessel third party contribution actions against employers are not barred if based on the employer's breach of a tort duty it owed to the third party, since such a tort duty would not arise "on account of" the employee's death or injury. *See, e.g. Horton,* 616 F.Supp. at 131; *Holden,* 473 F.Supp. at 1100–01.

This view is entirely consistent with the Supreme Court's analysis of section 8116(c) of the Federal Employees' Compensation Act (FECA), an analogous provision to section 905(a) of the LHWCA. *See Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). The FECA provides a workers' compensation program for certain federal employees. *See* 5 U.S.C.A. § 8101, *et seq.* (West 1980 & Supp.1990). Section 8116(c) of the FECA prohibits actions against the United States by an "employee, his legal representative, ... [or] any other person otherwise entitled to recover damages from the United States ... because of the [employee's] injury or death...." 5 U.S.C.A. § 8116(c). In *Lockheed,* a civilian United States Navy employee died in the crash of a United States Air Force aircraft which had been manufactured by Lockheed. Pursuant to the FECA, the United States paid death benefits to the employee's survivors. *Lockheed,* 460 U.S. at 191, 103 S.Ct. at 1035. The employee's administrator thereafter filed suit against Lockheed, and Lockheed impleaded the United States under an indemnification theory. *Id.* at 191–92, 103 S.Ct. at 1035–36. The Supreme Court held that "any other person otherwise entitled to recover damages" in section 8116(c) did

not include an unrelated third party such as Lockheed seeking indemnification under tort law. *Id.* at 193–98, 103 S.Ct. at 1036–39.

This court declines to follow the cases relied on by NASSCO which contain broad language indicating that there is no right to contribution or indemnification against an employer under the LHWCA. *See, e.g. Drake v. Raymark Industries, Inc.,* 772 F.2d 1007, 1022 (1st Cir.1985), *cert. denied,* 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986) (holding that the LHWCA barred non-vessel third party claims for contribution and noncontractual indemnity against an employer); *S.S. Seatrain Louisiana, etc. v. Cal. Stevedore,* 424 F.Supp. 180, 183–85 (N.D.Cal.1976) (holding that absent an express or implied contract for indemnity, no indemnity in tort can be obtained by a non-vessel third party from a LHWCA employer). In *Drake,* the non-vessel third party was an asbestos manufacturer who alleged that the employer (a ship repairer) breached its duties to its employees by failing to protect the employees from potential harm in the use of the asbestos. *Id.* at 1009–10. The court noted that the third party was seeking contribution based on a breach of duty between the employer and the employee, not the employer and the third party. *Id.* at 1022. Therefore, the *Drake* court could have dismissed the third party claims by following the majority rule developed in *Pippen* and the other cases cited above, and the sweeping language in the opinion stating that section 905 bars even non-vessel third party contribution actions would have been unnecessary for the court's holding.

Instead, the *Drake* court relied on a statement by Senator Donald Nickles, the chair of the Senate Labor Subcommittee in 1984, at a time when Congress was amending the LHWCA. *See Drake,* 772 F.2d at 1022. Senator Nickles stated that the committee was aware of the *Lockheed* decision and concerned that courts might begin to allow contribution claims against employers by non-vessels, but that the clear language of section 905(a) indicated that Congress intended to prohibit all third party liability claims against the employer. 130 Cong.Rec. S11621 (daily ed. Sept. 20, 1984). The *Drake* court interpreted Senator Nickles' statement as an "authoritative expression of Congress" which reinforced the view that section 905(a) was intended to bar all indemnity and contribution actions against LHWCA employers. *See Drake,* 772 F.2d at 1022. NASSCO in this motion also urges this court to adopt Senator Nickles' statement as reflective of Congressional intent. However, the statement was merely Senator Nickles' own personal view. On that same day, Senator Orrin Hatch testified that the committee did not address the issue of third party liability of employers to non-vessels following the *Lockheed* decision, and therefore they did not attempt to amend the section in this regard. 130 Cong.Rec. S11625–26 (daily ed. Sept. 20, 1984). Senator Hatch also expressed his own opinion that section 905(a) should bar all third party actions against LHWCA employers, but it was not the opinion of the entire Senate subcommittee, let alone of the entire Congress. *Id.* Significantly, Congress amended subsections (a) and (b) of the LHWCA in 1984, but they did not add further restrictions to actions against employers to include claims by non-vessels. *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426 §§ 4(b), 5(a)(1), (b), 98 Stat. 1641 (1984).

The court in *S.S. Seatrain* reasoned that allowing third party claims against employers by non-vessels would run contrary to the purposes of Congress when it amended the Act in 1972 to add section 905(b). *See S.S. Seatrain,* 424 F.Supp. at 183–85. However, the language of the 1972 Amendment indicates that the Congressional intent was not so broad. The explicit language of section 905(b) prohibits third party claims against LHWCA employers by vessel owners, and no one else. There is no legislative history which indicates that Congress intended to prohibit other third party claims. *See Pippen,* 661 F.2d at 386–88 & n. 15; *Zapico,* 579 F.2d at 721–22.

■ Therefore, this court holds that as long as AMCA, Minnesota Liquidating and Microdot find some basis for their rights to

contribution and/or indemnity, there is no blanket preclusion by the LHWCA. The final question is whether the causes of action for contribution or indemnity stated by AMCA, Minnesota Liquidating and Microdot are based on either an express or implied contractual obligation between the third party and the employer, or an obligation in tort between the employer and the third party. It is very unclear exactly what theories AMCA, Minnesota Liquidating and Microdot are using to plead contribution or indemnity. AMCA concedes that there was no express hold-harmless agreement between itself and NASSCO. Instead, AMCA alleges that it provided numerous warnings to NASSCO not to use the cranes to transport personnel, and that NASSCO ignored those warnings and failed to post them for their employees. AMCA argues that this "special relationship" between the parties required NASSCO to either use the warnings or to indemnify AMCA if AMCA is found liable and those warnings could have prevented the accident. However, Microdot's contribution and indemnity claims are based at least partially on NASSCO's alleged failure to provide a safe working environment for its employees. This allegation has nothing to do with a duty of care between NASSCO and Microdot and therefore should be dismissed. The specific theories of the individual cross-claims are unclear to the court. Therefore, to clarify the record, the court will dismiss all of the cross-claims against NASSCO with leave to amend, with the proviso that the allegations fit the framework described above.

To conclude, the court construes NASSCO's motion for summary judgment as a motion to dismiss and dismisses all cross-claims against NASSCO with leave to amend as described in this opinion. AMCA, Minnesota Liquidating and Microdot shall have 45 days to amend from the date of entry of this order. After amendment, NASSCO may renew its motion for summary judgment if desired.

IT IS SO ORDERED.