Carge JOHNSON, Jr., et al., Plaintiffs,

v.

NATIONAL STEEL & SHIPBUILDING COMPANY, et al., Defendants.

And All Consolidated Actions.

Civ. Nos. 87–1361–G(M), 87–1362–G(M), 87–1363–G(M), 87–1453–G(M), 87–1716–G(M), 88–0141–G(M), 88–0142–G(M), 88–0202–G(M), 88–0294–G(M), 88–0788–G(M), 88–1001–G(M), 88–1007–G(M), 88–1010–G(M), 88–1011–G(M), 88–1024–G(M), 88–1025–G(M), 88–1028–G(M) and 88–1029–G(M).

United States District Court,
S.D. California.

March 18, 1991.

Preston Easley, San Pedro, Cal., L. Richard Rawls, Palmieri, Tyler, Wiener, Wilhelm & Waldron, Irvine, Cal., Kathleen Cuffaro, Law Offices of Virginia C. Nelson, Mark D. Adelman, Law Offices of Mark Adelman, James C. Holzmann, San Diego, Cal., Gerald R. Solomon, El Cajon, Cal., Maynard O. Kartvedt, El Cajon, Cal., Janet E. Sobel, Jennings, Engstrand & Henrikson, John M. Schau, San Diego, Cal., for plaintiffs.

Alvin G. Kalmanson, National Steel & Shipbuilding, Sidney A. Stutz, Stutz, Gallagher & Artiano, Roberta Fairbanks, Borton, Petrini & Conron, San Diego, Cal., A. Kirk Gasperecz, Adams & Reese, New Orleans, La., Regina A. Petty, Gray, Cary, Ames & Frye, David B. Oberholtzer, Post, Kirby, Noonan & Sweat, San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

GILLIAM, District Judge.

On November 13, 1990, plaintiffs' motion to amend complaints and for partial summary judgment, defendant National Steel and Shipbuilding Company's ("NASSCO") motion to dismiss amended cross claims, and defendant Cleveland Machine Controls' ("CMC") motion for leave of court to file counterclaims and cross-claims came on for hearing before the Honorable Earl B. Gilliam. Virginia C. Nelson and Kathleen Cuffaro appeared for the Estrella and Delgadillo plaintiffs. Sidney A. Stutz and James F. Holtz appeared for NASSCO. DeEtte L. Loeffler and A. Kirk Gasperecz appeared for AMCA. Roberta R. Fairbanks and Thomas J. Stoddard appeared for defendant Microdot and Minnesota Liquidating. David B. Oberholtzer appeared for CMC.

At the conclusion of the hearing, the court denied plaintiffs' motion for partial summary judgment, and granted plaintiffs permission to file an amended complaint. The court took NASSCO's motion to dismiss amended cross-claims and CMC's motion for leave to file counterclaims and cross-claims under submission pending decision by Magistrate Judge Harry R. McCue of the Southern District of California on motions for good faith settlement determination.[1]

After considering all of the pleadings, memoranda of points and authorities, and other documents on file herein, and after having heard and considered oral argument, the court grants NASSCO's motion to dismiss amended cross-claims and denies CMC's motion for leave to file counterclaims and cross-claims.

## FACTS

On July 10, 1987, the U.S.S. Sacramento was shifted from a drydock to Berth 5 in the shipyard of NASSCO. Plaintiffs and plaintiffs' decedents, all NASSCO employees, were performing duties relating to the movement of the Sacramento and the shifting of a barracks barge to the outboard of the Sacramento. This operation was performed under the supervision of the United States Navy and a San Diego Harbor pilot.

After the Sacramento was shifted, a personnel basket was lowered by crane to retrieve the plaintiffs and plaintiffs' decedents from the barge and transport them to the dock. The personnel basket was attached to the whip line of a Clyde Whirley crane, C–W number 3864, NASSCO number 7 ("Crane No. 7"). As the basket moved over the Sacramento, it fell to the deck of the ship. Of the twelve workers in

---

1. Good faith settlement motions were brought before Magistrate Judge McCue in the following cases: *Starke v. NASSCO* (Case No. 88–1024); *Sumner v. NASSCO* (Case No. 88–1028); *Johnson v. NASSCO* (Case No. 87–1361); *Miller v. NASSCO* (Case No. 87–1362); *Wilson v. NASSCO* (Case No. 87–1363). All of these cases are governed by the Jones Act, 46 U.S.C.App. § 688. Under the Jones Act, a seaman who suffers injury or death in the course of his or her employment may bring an action for damages against the employer.

the basket, six were killed and six were seriously injured. The Sacramento was on navigable waters at the time of the accident.

Plaintiffs filed a complaint against various defendants under theories including the Jones Act, common law negligence, products liability and breach of warranty. The defendants have filed numerous cross-complaints against one another.

The defendants at issue in this motion are NASSCO, AMCA, Microdot and Minnesota Liquidating, and CMC. As stated above, NASSCO was the employer of plaintiffs and their decedents at the time of the accident. CMC is a successor in interest to Randtronics, the company which allegedly manufactured and installed the control system for the electric motor used to hoist the whip line of Crane No. 7.

The role of the other three defendants, Microdot and Minnesota Liquidating, and AMCA, is more complicated. Crane No. 7 was manufactured by Clyde Iron Works, Inc. in 1964 or 1965. Sometime around 1970, Clyde Iron Works became a wholly-owned subsidiary of Microdot. In 1973, Microdot sold the business of Clyde Iron Works to Dombrico, Inc. Under the sales agreement, Microdot kept all of the sales proceeds and changed the name of Clyde Iron Works to Minnesota Liquidating Company. Minnesota Liquidating remained a shell corporation and for all intents and purposes ceased business activity. After purchasing Clyde Iron Works in 1973, Dombrico used the factory to continue to produce the same line of cranes under the name "Clyde Iron." AMCA is the successor corporation of Dombrico.[2]

AMCA and Microdot have filed amended cross-claims against NASSCO for full or partial equitable indemnity, full or partial comparative indemnity and declaratory relief. CMC moved for leave to file counterclaims and cross-claims which essentially make the same claims of indemnity and contribution against NASSCO as asserted by the other cross-claimants in this motion.

NASSCO is seeking to dismiss these cross-claims, and opposes granting CMC request for leave to file cross-claims.

## DISCUSSION

The exclusive liability provision of the Longshore and Harbor Workers' Compensation Act ("LHWCA") states, in relevant part:

The liability of an employer prescribed in section 904 of this title *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative, ... *and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death....*

33 U.S.C. § 905(a) (emphasis added). Additionally, section 905(b) provides:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party ... and *the employer shall not be liable to the vessel for such damages* directly or indirectly and any agreements to the contrary shall be void.

*See* 33 U.S.C. § 905(b) (West 1986 & Supp. 1990) (emphasis added). Significantly, NASSCO has already paid benefits to deceased and injured workers and their families under the LHWCA, and submits that those payments are the employee's exclusive remedy.

On June 4, 1990, this court construed NASSCO's motion for summary judgment against AMCA, Microdot and Minnesota Liquidating as a motion to dismiss, and dismissed cross-claims against NASSCO with leave to amend. In the memorandum decision and order issued pursuant to the hearing on June 4, 1990, this court interpreted the explicit language of section 905(b) to only prohibit third-party claims by vessel owners against LHWCA employers. The court held that "as long as AMCA, Minnesota Liquidating and Microdot find

---

**2.** The issue of whether AMCA, Microdot or Minnesota Liquidating should be liable for cranes manufactured before 1973 has not yet been resolved. Hereinafter, Microdot and Minnesota Liquidating will be referred to as "Microdot."

some basis for their rights to contribution and/or indemnity, there is no blanket preclusion by the LHWCA." *Johnson v. National Steel & Shipbuilding Company,* 742 F.Supp. 1062, 1067–68 (S.D.Cal.1990). Thus, while the court dismissed the "unclear" indemnity/contribution theories asserted by these parties in their original cross-complaint, the court allowed cross-claimants 45 days to amend the cross-complaints "with the proviso that the allegations fit the framework described above." *Id.* at 1068.

The question presently before the court is whether AMCA, Microdot, and CMC (in the proposed amended cross-complaint) have met the courts proviso in the June 4 hearing, namely that these parties find some basis for their rights for contribution and/or indemnity.

The amended cross-complaints allege that NASSCO is liable to third-party defendants under theories of equitable indemnity, comparative indemnity, contribution, implied contractual indemnity, indemnity for breach of independent tort obligation and alternatively, apportionment of employer negligence in their amended cross-complaints.[3]

### 1. The Effect of Good Faith Settlement in the Jones Act Cases

On February 5, 1991, Magistrate Judge McCue issued recommendations on NASSCO's motion for good faith settlement determination in the five cases where plaintiffs alleged claims against NASSCO under the Jones Act. *See* Magistrate's Findings of Fact and Recommendations to District Court Regarding Motion of National Steel and Shipbuilding Company for Determination of Good Faith Settlement in *Johnson v. NASSCO,* No. 87–1361–G(M) (S.D.Cal. February 5, 1991); *Miller v. NASSCO,* No. 87–1362–G(M) (S.D.Cal. February 5, 1991); *Wilson v. NASSCO,* No. 87–1363–G(M) (S.D.Cal. February 5, 1991); *Starke v. NASSCO,* No. 88–1024–G(M) (S.D.Cal. Feb-

ruary 5, 1991); and *Sumner v. NASSCO,* No. 88–1028–G(M) (S.D.Cal. February 5, 1991). Magistrate Judge McCue recommended that this court approve the settlement entered into between plaintiffs in the Jones Act cases and NASSCO as having been made in good faith, and that this court dismiss with prejudice AMCA's and Microdot's cross-claims against NASSCO for equitable indemnity or apportionment, comparative indemnity, and contribution. This court adopted Magistrate Judge McCue's recommendations in an order filed on February 14, 1991. *See* Order Adopting Magistrate's Recommendations and Dismissing Portions of Cross–Claims in *Johnson, Miller, Wilson, Starke,* and *Sumner.* Pursuant to that order, only the claims for implied contractual indemnity and indemnity for breach of independent tort obligation remain.

### 2. The Amended Cross–Claims

■ In their claim for implied contractual indemnity, third-party defendants allege that NASSCO "designed, approved, and performed substantial alterations and/or modifications to the subject crane, and had superior knowledge with respect to its operation and capabilities." Third-party defendants also allege that cross-claimants relied on NASSCO to disseminate "warnings, prohibitions, and other safety information" regarding use of the crane to carry personnel, and that by not disseminating these warnings, NASSCO breached their implied contract to cross-claimants to post such warnings. *See* Microdot, Inc. and Minnesota Liquidating Company Second Amended Cross–Claims, ¶¶ XIII–XVI; AMCA Third Amended Cross–Complaint, ¶¶ 11–15 (using identical language). In their claim for breach of an independent tort obligation, third-party defendants allege that if the relationship between NASSCO and cross-claimants created in cross-claimants a duty to warn, then NASSCO

**3.** AMCA and Microdot and Minnesota Liquidating essentially make the same allegations against NASSCO in their amended complaints. In addition, Cleveland Machine Controls makes similar allegations of implied contractual in-

demnity and breach of a duty of care. Accordingly, any evaluation of AMCA's and Microdot's claims is largely dispositive of Cleveland Machine Controls' proposed counterclaims.

had a corresponding duty of reasonable care and diligence, which translates into a duty to disseminate warnings to crane users, and that NASSCO breached this duty. *See* Microdot, Inc. and Minnesota Liquidating Company Second Amended Cross–Claims, ¶¶ XVII–XXI; AMCA Third Amended Cross–Complaint, ¶¶ 17–21 (again, using identical language).

This court's language in the order dismissing the previous cross-claims against NASSCO is instructive in determining whether third-party defendants have provided "some basis for their rights to contribution and/or indemnity." *See Johnson,* 742 F.Supp. at 1067–68. This court made the following observation:

> ... Microdot's contribution and indemnity claims are based at least partially on NASSCO's alleged failure to provide a safe working environment for its employees. This allegation has nothing to do with a duty of care between NASSCO and Microdot and therefore should be dismissed.

*Id.* at 1068. Unable to discern the theories underlying the cross-claims, this court dismissed all cross-claims. *Id.* Thus, cross-complaints were required to allege theories of contribution and indemnity without basing these theories on any duty that NASSCO owed its employees. *See, e.g., Couch v. Cro–Marine Transport, Inc.,* 725 F.Supp. 978, 982 (C.D.Ill.1989) (Section 905(a) of the LHWCA "bars only actions by those seeking to recover through the employee"); *Horton v. Sun Exploration and Production Co.,* 616 F.Supp. 130, 131 (W.D.La.1985) ("a § 905(a) employer is subject to non-vessel third-party indemnification claims arising out of contract (implied or express) *or* an obligation in tort *between the employer and the third party* ") (emphasis in original) (citing *Pippen v. Shell Oil Co.,* 661 F.2d 378, 386–88 (5th Cir.1981); 2B *Larson's Workmen's Compensation Law,* § 76.00 at 14–644 (Matthew Bender 1989) (third party action requires breach of an "independent duty toward the third par-

ty," or must be based in an "implied promise of indemnity").

Although some courts have commented that a non-vessel third-party may recover indemnity from an LHWCA employer on the basis of an independent duty between the third-party and employer, neither the Ninth Circuit nor other courts have specified what that duty may be. In *Roy v. Star Chopper Co., Inc.,* 442 F.Supp. 1010 (D.R.I.1977), *aff'd,* 584 F.2d 1124 (1st Cir. 1978), *cert. denied, Star Chopper Company, Inc. v. Roy,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), a suit in which an injured Massachusetts employee brought suit against the manufacturer of the machine causing the injury, and in which the manufacturer impleaded the employer, the district court evaluated similar cross-claims in light of the exclusive-remedy clause in the Massachusetts Workmen's Compensation Act.[4] First, the court determined that under the Massachusetts statute,

> [even where] the party seeing indemnity uses contract language, if the obligation has its origin "in the injury itself and the circumstances surrounding it, and the liabilities that it creates and the indemnity obligation itself springs exclusively from the comparison of the relationships of the two parties to the injury," it is barred.

*Roy,* 442 F.Supp. at 1018 (citing 2A *Larson's Workmen's Compensation* § 76.44, n. 81 (Matthew Bender 1976)). Thus the manufacturer's indemnity claim, which was based on the employer's failure to warn its employees of the hazards of the machine and any alteration or misuse following delivery, were "easily dismissed" since the duty ran to the employees, not the manufacturer. Significantly, the court found that the "employer's duty of proper use and care of the machine runs solely to its employees.... The employer does not have an independent duty running to the manufacturer to use the machinery so as to avoid imposition of liability upon the manufacturer." *Id.* (citing *Santisteven v. Dow Chemical Co.,* 506 F.2d 1216, 1219 (9th

---

**4.** The Massachusetts Workmen's Compensation Act mandates that, absent express reservation of common law rights, the injured employee's ex- clusive remedy against his employer is to seek a compensation award under the Act. M.G.L.A. c. 152, § 24 (1958).

Cir.1974)). Although the court found an implied contract to indemnify in *Roy*, their holding was "narrowly confined" to the situation before them, in which the relationship between the employer and manufacturer was more in the nature of co-manufacturers than manufacturer/purchaser. *Id.* at 1020. The court added that if misuse of the machine was unforeseeable, this would provide a complete defense for the manufacturer. *Id.* at 1019.

Similarly, in *Santisteven*, where the supplier of the injury-causing chemical impleaded the employer for indemnity claiming that the employer failed to properly instruct its employees and to provide a safe place to work, the Ninth Circuit read the exclusivity provision in the Nevada Industrial Act to exclude indemnity actions based on an alleged independent duty on the part of the employer to avoid subjecting the manufacturer to tort liability. *Id.* at 1219.[5] Indemnity will not be triggered by an abstract duty owed to an employee; instead, indemnity is allowed "because the employer's transgression is more serious than the third party's." *Id.* However, "if it is in reality a liability of employer to employee that supports indemnification, that is exactly the type of liability which the Nevada Act extinguishes." *Id.* at 1219–20.

Third-party defendants have not made allegations sufficient to meet the standard of pleading imposed by the Memorandum Decision and Order of July 3, 1990, and necessary to sustain a claim for indemnity under the LHWCA. Although third-party defendants allege that NASSCO owed them an independent duty to warn, their allegations reflect that such a duty exists only through NASSCO's duty to its employees. For example, when AMCA claims that "NASSCO failed ... to communicate the prohibitions to users of its cranes, ... that an implied contract existed that obligated NASSCO ... to communicate the prohibitions," and that its duty to AMCA "obligat-

ed NASSCO to ... bring these and other prohibitions to the attention of users of such cranes," AMCA speaks in terms of NASSCO's duty to warn its employees. *See* AMCA's Third Amended Cross–Complaint, ¶¶ 14–15, and ¶ 18; *see also* Microdot's Second Amended Cross–Claim, ¶¶ XIII–XV, ¶¶ XVIII–XIX (making similar allegations). Since any duty NASSCO owes its employees is exclusively satisfied by a compensation award under the LHWCA, AMCA's indemnity claim "arises solely from this discharged liability," and NASSCO has no independent duty to AMCA. *Roy*, 442 F.Supp. at 1018–1019. Borrowing the Ninth Circuit's language in *Santisteven*, where the alleged indemnity or contribution claimed "is in reality a liability of employer to employee ..., that is exactly the type of liability which [the LHWCA] extinguishes." *See Santisteven*, 506 F.2d at 1219–20.

Cross-claimants argue that the cases cited in NASSCO's brief rejected indemnity claims only after trial on the merits or a summary judgment motion, rather than on a motion to dismiss, whereas *Couch* and *Horton* allowed indemnity claims to go forward. *See Horton*, 616 F.Supp. at 131; *Couch*, 725 F.Supp. at 982. However, *Horton* and *Couch* provide little or no analysis of the facts necessary to support an implied indemnity claim, and *Couch* concerned benefits under a state compensation scheme which expressly allowed suits for contribution from a joint tortfeasor/employer, unlike the LHWCA. Therefore, this court puts more weight in the analysis provided in *Roy* and *Santisteven*, which both involved state compensation schemes with exclusive-remedy clauses similar to that in the LHWCA.

Even though Microdot alleges that NASSCO's duty "is owed directly to cross-claimants, and is independent of any duty NASSCO owed to its employees or to plaintiffs" (Second Amended Cross–Claim, ¶ XIX), the

---

**5.** Section 616.370 of the Nevada Industrial Act provides, in relevant part:

    1. The rights and remedies provided in this chapter for an employee *on account of an injury* by accident sustained arising out of and in the course of the employment *shall be* exclusive ... of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, *on account of such injury*. (emphasis added).

indemnity cross-claims made by Microdot and AMCA describe duties which ran to the employees, not to cross-claimants, and are therefore barred under the LHWCA. Accordingly, under Fed.R.Civ.P. 12(b)(6), third-party defendants have failed to state claims upon which relief can be granted. The amended cross-claims are therefore dismissed.

### 3. CMC's Motion for Leave to File Cross–Claims and Counterclaims

■ A motion for leave to amend pleadings to file cross-claims is subject to whether the amendment is in bad faith, will cause undue delay, will prejudice the opposing party, or is futile. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). Although in most cases leave to amend a pleading is given freely, a motion to amend may properly be denied where the amendment is futile and thus vulnerable to motions to dismiss and for summary judgment. *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 658 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir.), *cert. denied*, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau*, 701 F.2d 1276, 1293 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir.1986).

CMC has requested leave of court to amend its current pleadings to reflect cross-claims and counterclaims against NASSCO under Federal Rules of Civil Procedure 13(f) and 15(a). CMC asserts claims of implied contractual indemnity and breach of a duty of care entitling them to equitable indemnity against NASSCO, and alleges that NASSCO breached "implied and express promises" and a duty of care "to keep and operate the equipment ... in a workmanlike and competent manner." Counter–Claim of CMC, Inc. Against NASSCO, ¶¶ 7–8, 11–13. However, CMC has provided even less of a theoretical basis for their cross-claims than AMCA and Microdot in their amended cross-complaints. Moreover, allegations for implied contractual indemnity and breach of a duty of care sound in the same allegations made by AMCA and Microdot, which this court has already determined should be dismissed. The "employer's duty of proper use and care of the machine runs solely to its employees," and thus a claim for indemnity against the employer must be dismissed pursuant to the exclusive remedy provided in the LHWCA. *See Roy*, 442 F.Supp. at 1019. Accordingly, since CMC's assertion of cross-claims for implied contractual indemnity and breach of a duty of care would be futile, leave to file cross-claims is denied.

IT IS SO ORDERED.